# Electric Company of America *v.* Edison Electric Illuminating Company, Appellant.

*Corporations—Stock—Pro rata distribution of new stock.*

When the capital stock of a corporation is increased by the issue of new shares, a holder of the original stock has a right to subscribe for and demand from the corporation such a proportion of the new stock as the number of shares already owned by him bears to the whole number of shares before the increase; and especially is this the rule where directors issue such new stock to themselves or their friends in order to control an election or make a profit.

*Corporations—New stock—Rights of stockholders—Power of directors.*

The directors of a corporation have no power to invite sealed bids for new stock and to award it to the highest bidder. The right to subscribe to new stock belongs to the stockholders of the corporation at the time of its issue and the directors are powerless to deprive them of this right.

Argued April 22, 1901. Appeal, No. 273, Jan. T., 1900, by defendants, from decree of C. P. Blair Co., Equity Docket "B," No. 347, on bill in equity, in case of the Electric Company of America, a corporation organized under the laws of the state of New Jersey, A. Louden Snowden, Joseph B. McCall and Frank B. Ball, *v.* The Edison Electric Illuminating Company of Altoona, and the President and Board of Directors of The Edison Electric Illuminating Company of Altoona. Before MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Bill in equity for an injunction.

BELL, P. J., filed the following opinion:

## FINDINGS OF FACT.

The Edison Electric Illuminating Company of Altoona was incorporated under act of April 29, 1874, and its supplements. Prior to April 25, 1893, the capital stock was $86,000, the par value of each share being $50.00. At a meeting of the stockholders held on April 25, 1893, an increase of the capital stock to $300,000 was authorized, and the following resolution was passed by the board of directors on same day:

"Resolved, That the increase of capital stock authorized this day be issued from time to time and for such purposes as the board of directors may desire."

No method of issue, however, was suggested or directed at said stockholders' meeting.

From time to time thereafter stock was issued by the directors, as set forth in the answer, but I attach no importance to such issues as a controlling factor in the present controversery, as no question or dispute arose about the said issues. Said stock so issued was generally applied directly to the payment of debts or liabilities; in the exceptional case where it was not so applied, May 6, 1893, 1,000 shares were prorated to the stockholders.

Up to July, 1900, 3,994 shares of stock, of the par value, of $50.00, had been issued. Of this stock, the plaintiffs are the owners of or control 2,283 shares. Defendants own or control the balance. Plaintiffs are, therefore, holders of about fifty-three per cent; defendants of about forty-seven per cent. Although plaintiffs control a majority of the stock, they are represented on the board of directors by but two of the six directors, namely, A. Loudon Snowden and Joseph B. McCall. The defendant stockholders are represented on said board by four directors, namely, John Lloyd, C. A. Buch, T. B. Patton and H. E. Ferguson.

At a meeting of the board of directors on July 25, 1900, the following resolution was adopted, said last mentioned four directors voting "aye," and Colonel Snowden and Mr. McCall voting "no":

"Resolved, That under authority given April 25, 1893, 650 shares of unissued capital stock of this company be issued and sold, the proceeds to be applied to the installation of additional steam and electric power now under contract, and for further improvements and extensions under contemplation.

"Resolved, further, That bids be invited for the purchase of all or any part of this stock and that it be awarded in favor of those bidding the highest price. Sealed bids should be addressed to C. A. Buch, secretary and treasurer, accompanied by ten per cent of amount of bid, either in cash or certified check, and will be received up to nine o'clock, Tuesday, July 31, 1900."

At the same meeting an amendment offered by Joseph B.

McCall to said resolution so adopted was defeated by a vote of two affirmatives (Snowden and McCall) to four negatives (Lloyd, Buch, Patton and Ferguson). Said amendment so defeated reads as follows :

"Resolved, That any portion of the authorized issue of the capital stock of this company that has not heretofore been issued, and which may be offered for subscription, shall first be offered to the stockholders of record of the company, who alone shall have the right to subscribe therefor pro rata in proportion to their holdings of said stock ; said subscription to be taken at a price not less than the prices governing the last sale of said stock and the full amount of such subscription to be payable on demand."

At the same meeting, by a similar vote, the following resolution, offered by Colonel Snowden, was likewise defeated :

"Resolved, That a special meeting of the stockholders of this company be, and the same is hereby called, to meet at the office of the company, in Altoona, Pa., on the usual five days' notice, in conformity with the call at the meeting this day presented and with the by-laws of this company, to vote upon a resolution then to be submitted, providing that as much or any portion of the authorized issue of the capital stock of this company as has not heretofore been issued and which may be offered for subscription, shall first be offered to the stockholders of record of the company, who alone shall have the right to subscribe therefor pro rata in proportion to their holdings of said stock."

Mr. Buch, as secretary and treasurer, by virtue of said resolution so adopted by the board of directors, inserted the following advertisement in the Altoona papers :

"Proposals for the purchase of capital stock of the Edison Electric Illuminating Company, of Altoona, Pa.

"In accordance with resolution adopted by the Board of Directors of the Edison Electric Illuminating Company, of Altoona, Pa., at a meeting held July 25, bids are hereby invited for the purchase of all or any part of 650 shares of the unissued capital stock of the company. The stock will be awarded in favor of those bidding the highest price. Sealed bids accompanied by ten per cent of the amount of bid, either in cash or certified check, should be addressed to C. A. Buch, secretary

and treasurer, Altoona, Pa., and will be received up to nine o'clock A. M., Tuesday, July 31, 1900.

"C. A. BUCH,
"Secretary and Treasurer
of The Edison Electric Illuminating Company."

At the hearing of this matter, some testimony was taken, as to the necessity of the issue of said stock, plaintiff intimating that the issue was too great; but I attach no importance to this feature of the case, as no such complaint is made in the bill; and at said meeting of the board of directors, all of the directors seemed to have acted on the theory that there was necessity for such increase.

Plaintiffs alleging that they " have reason to believe that John Lloyd, C. A. Buch, T. B. Patton and H. E. Ferguson, the directors who voted against the resolution offered by A. Loudon Snowden, and against the amendment offered by Joseph B. McCall, and in favor of the resolution to receive bids for the stock, design and intended unlawfully and arbitrarily, and against the protest of your orators, to prevent your orators from exercising their just and equitable right to subscribe pro rata in proportion to their holdings for said new issue of stock; and thereby wrongfully to obtain for them, the said John Lloyd, C. A. Buch, T. B. Patton and H. E. Ferguson, a majority of the issued stock of the company, and the control of its offices and franchises at future elections," filed this bill, asking an injunction to restrain, etc. A preliminary injunction was issued July 28, 1900, and hearing fixed for August 2, 1900. On August 2, 1900, defendants filed their answer, plaintiffs their replication thereto, and all parties agreed that the matter should be then proceeded in as if on final hearing.

The question for determination is whether the said resolution of the directors, adopted July 25, 1900, virtually selling the stock on secret bids to the highest bidder, was valid and legal, or whether all stockholders should be given an opportunity to subscribe for such increase of stock in pro rata proportion to their holdings.

### LEGAL DISCUSSION.

When stock is issued under circumstances like the present,

the general rule is that holders of stock have a right to have the new stock issued to them in proportions pro rata to their holdings at the time of such new issue. The following citations from text writers establish conclusively that such is the general rule:

Taylor on Corporations, sec. 569: " . . . If the capital stock is increased by the proper authorities the right to take the additional shares vests in the stockholder pro rata. The right may be waived, but the directors cannot deprive a stockholder of it. Accordingly, when a corporation is issuing new stock generally, and refuses to issue to a stockholder his due proportion, he can compel it to do so by a suit in equity; at least, so long as there remains stock undisposed of."

Morawetz on Corporations, sec. 455: " Right of pre-emption. It seems that if a corporation resolves to increase the amount of its capital by issuing and selling new shares, every stockholder has a right of pre-emption of a fractional part of the new issue proportionate to his fractional share in the company's entire stock. Each stockholder is thus enabled to preserve his voice in the management of the company's affairs."

23 Am. & Eng. Ency. of Law, p. 853: " Right to share in distribution of new stock. Those who are shareholders when an increase of the capital stock is effected enjoy the right to subscribe to the new stock in proportion to their shares and before subscriptions may be received from outsiders. This right is generally absolute and a bonus cannot be exacted as a condition of its exercise. . . . "

Cook on Stock and Stockholders, sec. 286: " Prior Right of the Old Stockholder to buy the new stock.—When the capital stock of a corporation is increased by the issue of new shares, each holder of the original stock has a right to offer to subscribe for and to demand from the corporation such a proportion of the new stock as the number of shares already owned by him bears to the whole number of shares before the increase. This pre-emptive right of the shareholder in respect to the new stock is well recognized. . . .

" Especially is this the rule where the directors issue such new stock to themselves or their friends in order to control an election or make a profit. . . . An attempt to deprive the stockholder of this right will be enjoined in the absence of

laches or acquiescence. The courts go very far in protecting the right of stockholders to subscribe for new stock. It is often a very important right."

In Morris v. Stevens, 178 Pa. 568, this court, after citing a portion of the foregoing text from Cook on Stock, went on to say : " Counsel for defendants cite Curry v. Scott, 54 Pa. 277, as holding that the above rule is not law in Pennsylvania. Some of the remarks of STRONG, J., in his opinion, might seem to sustain said contention ; but a closer examination of the case shows that he puts his decision on the ground that ' the bill does not allege that plaintiff, or any of the old stockholders offered, or that they are willing to take ' the additional stock. On the other hand, Reese v. The Bank of Montgomery County, 31 Pa. 78, recognizes the existence of the foregoing legal rule laid down by Cook on Stock. Nor does it seem just and equitable to restrict the remedy to a suit against the corporation such as was brought in said case of Reese v. The Bank of Montgomery County. Such a remedy is inadequate and partially inequitable, as plaintiffs in effect would be taking part of the damages out of their own pockets, because their own stock would be diminished in value by reason of the amount paid out of the corporation treasury in the form of damages : Dousman v. Wisconsin and Lake Superior Mining, etc., Company, 40 Wisconsin, 418.

The Supreme Court affirmed said ruling (see Morris v. Stevens, 178 Pa. 578), Mr. Chief Justice STERRETT saying:

" In general, the present holders of stock have a primary right to subscribe in proportion to their holdings for any new issue. The stockholders themselves certainly may determine otherwise, and order a sale to the public, and payment of the proceeds into the treasury. But this is exceptional and the exercise of a reserve power that should not be permitted unless there is a clear intent of the stockholders to do so."

Against this weight and mass of legal authority we have only the argument of counsel for the defendants that this is an age of progress and times have changed; that the present is an exceptional case ; that it is difficult to ascertain the true market value of the stock in question, and that the method proposed by the directors, namely, receiving sealed bids and selling to the highest bidder, will result in obtaining the highest possible

price; that thereby the highest possible amount of money will be paid into the treasury, which will inure to the benefit of all the stockholders.

But, assume that the last matter so stated is true; [assume that in this particular case, by the method proposed, the stock will bring the highest possible price,—is such price so obtained a fair market price? Would it not rather be a fictitious price, enhanced by the peculiar and exceptional circumstances surrounding this particular transaction? The authorities cited show that when new stock is issued it should not be so disposed of as to change the power of control; the majority stockholders have a right to a majority of the new stock so as to preserve the right of control. But, if the proposed method, by secret bids to the highest bidder, is permitted, what course must the majority stockholders adopt? Clearly, in order to retain their control, they would have to endeavor to surmise the highest price that the minority stockholders, or any one else, would be willing to pay, and then bid a trifle over such highest price. And the minority stockholders might be very willing to pay a fictitious price, in the sense of a price not warranted by the earning power of the plant, but founded rather on a desire to get control of the corporation.

Here are plaintiffs owning fifty-three per cent of the stock; defendants owning forty-seven per cent. If defendants, by bidding a higher price, can obtain the 650 shares proposed to be issued, it gives them the control and ousts plaintiffs. What might defendants, under such circumstances, be willing to pay for said 650 shares of stock? Would not any amount which they would be willing so to pay, over and above the value placed on the earning power, be a fictitious value? Would it be right then, to compel the holders of a majority of the present stock to blindly surmise the fictitious value, which the minority might be willing to bid, under pain of losing the control, if their blind guess as to such fictitious value turned out to be too low? Or suppose an outsider was the successful bidder for the 650 shares, such outsider would then be master of the situation in the sense that he could auction off said shares, calling for bids alternately from the majority and minority, and finally disposing of them to the party who was willing to pay the greatest sum of money for the control.] [2]

[Again, the secretary and treasurer, to whom the proposed bids are to be given, is a friend of the minority stockholders. Is it right that he should be so placed in a position where it would be within his power to perpetrate a wrong by a wrongful manipulation of said bids? It seems to me that the method of issuing the 650 shares of stock proposed by the resolution of the board of directors, adopted July 25, 1900, is in the interest of the minority stockholders; that the tendency of such method is to defeat or greatly impair the right of the majority stockholders to obtain their fair and ratable proportion of the new stock at a fair and reasonable price.] [3]

### LEGAL CONCLUSIONS.

[It is unnecessary to decide whether the directors representing the minority of the stock had any ulterior purpose in voting to receive secret bids and then sell the stock to the highest bidder. Assume that they had no thought, much less purpose of obtaining a controlling interest in the stock of the corporation by the proposed method, still, as has been stated, the tendency of such proposed method is to give the minority stockholders an unfair advantage over the majority stockholders; the tendency of such proposed sale of stock through the medium of secret bids would be to deprive the majority stockholders of their right to take by subscription or allotment their proper pro rata share of the new issue of stock. The citations heretofore made show this to be a "pre-emptive right," an "absolute right," a "very important right," a right which "the courts go very far in protecting," especially when questions as to the control of the corporation may be involved. Such being the tendency of the proposed plan, it must be enjoined, and the authorities cited show very clearly that equity has jurisdiction.] [4] But, as counsel for the defendants at the outset of the case complained that the security given was inadequate, the plaintiffs are directed to file a bond in $10,000. This amount I regard as wholly adequate.

[It is unnecessary to suggest what plan would be valid and legal in issuing the 650 shares of stock. All that is now decided is that the method proposed by receiving secret bids in the manner contemplated by the resolution adopted by the directors on July 25, 1900, is invalid and illegal. But if the four

directors representing the minority of the stockholders desire only to do what is right and fair, as they claimed at the hearing to desire; and if, moreover, the two directors representing the majority will carry out their proposal, also made at the hearing, to pay a fair market price for the new stock, I see no reason why said six directors should not agree on some plan which would be just and equitable. They seem all to be fair-minded, shrewd business men. Certainly, if they are as fair-minded as they claim to be, they should be able to arrive at some plan of issue which would be mutually fair and equitable to all parties concerned.] [5] The majority stockholders had a meeting called for August 4 to take some action in regard to the issue of said stock. The minority stockholders on a b:ll filed, in the nature of a cross-bill to the present action, had such stockholders' meeting enjoined. No decision is now made in said bill wherein the minority stockholders are plaintiffs. The same is held under advisement, pending developments in the present case.

### DECREE.

[On August 2, 1900, this case came on for final hearing, by agreement of parties, and testimony was taken and the legal questions involved were argued by counsel.

And now, August 13, 1900, after due consideration, it is hereby ordered, adjudged and decreed that the injunction heretofore granted on July 28, 1900, is hereby made perpetual—plaintiffs, however, before August 27, 1900, to file a bond, with security to be approved by the court, in $10,000—defendants to pay the costs, but plaintiffs to file no bill for witnesses.] [6]

*Error assigned* was the decree of the court.

*Thomas H. Greevy*, for appellants.—The directors had a right to sell the stock in the manner proposed: Curry v. Scott, 54 Pa. 276; Reese v. Bank of Montgomery County, 31 Pa. 79; State v. Smith, 48 Vt. 266; Chicago City Ry. Co. v. Allerton, 18 Wall. (U. S.) 233; Mechanics' Bank of Alexandria v. Seton, 1 Pet. 299.

If a sale of the stock by a corporation is otherwise valid, it is not vitiated by the fact that the motive of some of the di-

rectors and of the purchaser was to enable the latter to vote on the stock in a certain manner on an approaching election of directors: State v. Smith, 48 Vt. 266; South Royalton Bank v. Suffolk Bank, 27 Vt. 505.

The board of directors of a corporation cannot be controlled in the exercise of the discretionary powers conferred upon them: Karnes v. Rochester, etc., R. R. Co., 4 Abb. Pr. (N. Y.) 110; Elkins v. Camden, etc., R. R. Co., 36 N. J. Eq. 241; Oglesby v. Attrill, 105 U. S. 605; Dudley v. Kentucky High School, 9 Bush. 578; Treadwell v. Salisbury Mfg. Co., 7 Gray (Mass.), 393; Durfee v. Old Colony, etc., R. R. Co., 5 Allen (Mass.), 231; Fareir v. Riter, 15 Phila. 58; Miller v. Illinois Cent. R. R. Co., 24 Barb. 329; Gravenstine's App., 49 Pa. 310; 1 Morawetz on Priv. Corp. (2 ed.) sec. 243; Cicotte v. Anciaux, 5 Am. & Eng. Corp. Cas. 279.

Plaintiff's remedy is at law not in equity: Reese v. Bank of Montgomery, 31 Pa. 78; Curry v. Scott, 54 Pa. 276; Reading Fire Ins. & Trust Co. v. Reading Iron Works, 137 Pa. 283; Cunningham's App., 108 Pa. 546; Miners' Nat. Bank v. Pottsville Water Co., 3. Leg. Chron. Rep. 48.

Appellants are not without authority, even in Pennsylvania, legally justifying a sale of untaken stock to other than the original subscribers, which will inure to the benefit of all: Reese v. Bank of Montgomery County, 31 Pa. 78; Curry v. Scott, 54 Pa. 275; Thompson's Commentaries on the Law of Corporations, sec. 2094; Morris v. Stevens, 178 Pa. 579; Wheeler's Case, 2 Abb. Pr. (N. S.) 361; Ohio Ins. Co. v. Nunnemacher, 15 Ind. 294.

An increased issue of stock can be sold at public auction: Miners' Nat. Bank v. Pottsville Water Co., 3 Leg. Chron. Rep. 48; Miller v. Illinois Cent. R. R. Co., 24 Barb. 329.

The United States supreme court decides that increased stock can be sold on the market, for the best price: Thompson's Commentaries, sec. 2092; Handley v. Stutz, 11 Pa. Superior Ct. 530.

*Daniel J. Neff* and *Charles E. Morgan, Jr.*, for appellee.— When the part of the stock offered for subscription is not taken, or when a part of the authorized capital is offered and is all taken, and subsequently it is resolved to issue more of the au-

thorized capital, or when the capital stock is increased under the statutes and the increase is about to be issued, every stockholder has the right to subscribe at par for such a proportion of the stock to be issued as his holdings bear to the amount of stock then outstanding. Any other rule would enable the parties in control, to seize the stock, in some cases for gain because the stock is worth more than par, and in other cases so as to acquire increased votes at a coming election: Cook on Stocks and Stockholders, sec. 286; Angell & Ames on Corporations, sec. 554; 1 Weimer on Penna. Corporation Law, 328; 1 Thompson on Corporations, sec. 1249; Taylor on Corporations, sec. 569; 1 Morawetz on Private Corporations, sec. 455; Reese v. Bank of Montgomery County, 31 Pa. 78; Wilson v. Bank of Montgomery County, 29 Pa. 537; Cunningham's App., 108 Pa. 547; Gray v. Portland Bank, 3 Mass. 364; Atkins v. Albree, 12 Allen (Mass.), 361; Dousman v. Wisconsin & Lake Superior Mining & Smelting Co., 40 Wis. 418; Humboldt Driving Park Assn. v. Stevens, 34 Neb. 528; Eidman v. Bowman, 58 Ill. 444; Jones v. Morrison, 31 Minn. 140.

PER CURIAM, October 11, 1901:

The decree is affirmed on the opinion of the learned judge below.