# Strickler *v.* McElroy, Appellant.

*Corporations—Stock—Increase of stock—Right to subscribe to new stock.*

1. When the capital stock of a corporation is increased by the issue of new shares, each holder of the original stock has a right to offer to subscribe for and demand from the corporation such a proportion of the new stock as the number of shares already owned by him bears to the whole number of shares before the increase.

2. The persons entitled to participate in the distribution of the new stock are those who are stockholders at the time the stock actually goes out.

3. The stockholder of a corporation authorized an increase of stock by the addition of 2,000 shares in 1892. All of the new stock was issued prior to 1901, except 172 shares. At the time the increase was authorized a resolution was passed providing the stock that day authorized and remaining undisposed of should issue thereafter upon such terms and in such manner as the board of directors might thereafter direct. In 1901, the directors of the company, who owned a controlling interest in the stock, entered into an arrangement among themselves by which they divided the 172 shares among themselves at par. No notice of their intention to do so was issued to the stockholders, and no stockholder other than themselves had knowledge of the transaction until the new shares had been issued and paid for. In the interval between 1892 and 1901 the stock had become three times as valuable, and five years after 1901, it was sold for four times the par value. One of the stockholders brought an action against the directors to recover his proportion of the profit derived by the directors from the sale of the stock to themselves. *Held,* that the plaintiff was entitled to recover.

Argued Oct. 5, 1910. Appeal, No. 29, March T., 1910, by defendants, from judgment of C. P. York Co., April T., 1907, No. 77, on verdict for plaintiff in case of Eli S. Strickler v. Henry McElroy and Howard L. Keller, Executors of the last will and testament of Henry McElroy, deceased, Henry Brinton Stock et al. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Assumpsit against the directors of a corporation to recover profit made on sale of stock.

The facts are stated in the opinion of the Superior Court.

At the trial the defendant presented the following points:

1. If the plaintiff originally had a right to demand a part of the stock authorized to be issued in 1892, he and all the stockholders waived that right in adopting the resolution of February 4, 1892, authorizing the directors of the corporation thereafter to issue the stock "upon such terms and in such manner as the board of directors shall hereafter direct," and the verdict of the jury must be for the defendants. *Answer:* This point is refused. If that concluding part had been left out, we might have affirmed the point; but we cannot affirm it with that in. [1]

2. There being no evidence of demand by the plaintiff upon the corporation for any of the increased stock, and no offer on his part to pay for the same, the plaintiff has no cause of action, and the verdict of the jury must be for the defendants. *Answer:* This point is refused. [2]

3. There is no evidence from which the jury can find that the plaintiff was the owner of any of the capital stock of the Wrightsville Hardware Company in 1892, when the increase, which the 172 shares in question were a part, was authorized; and therefore there is no evidence from which the jury can find that the plaintiff was in 1892, or at any other time, entitled to demand any part of the said increase, including the said 172 shares, be issued to him, and therefore the verdict of the jury must be for the defendants. *Answer:* This point is refused. [3]

4. There is no evidence that at the time the stock in question was bought and paid for by the defendants, to wit, April 2, 1901, that the plaintiff offered to subscribe and pay for the stock, or any part of it; and no evidence that he made any request for an allotment of it among the stockholders; and the uncontradicted evidence is that the plaintiff, although he had knowledge of the fact immediately after the stock was bought and paid for by the defendants, acquiesced until, to wit, March 22, 1907, when

this suit was brought, a period of almost six years. Under such circumstances it is too late for the plaintiff now to contend that this stock was unlawfully disposed of because no allotment of it was made among the stockholders. If the stockholders were at any time entitled to an allotment, they have waived such right by their act and their acquiescence in and recognition of the defendants' subscriptions. The verdict of the jury must be for the defendants. *Answer:* This point is refused. [4]

5. The uncontradicted evidence is that all of the original capital stock of the Wrightsville Hardware Company, to wit, $5,000 at par, was outstanding in 1892 at the time of the stock increase. The uncontradicted evidence is that in 1894 the plaintiff became the owner of 152 shares of the increased stock authorized in 1892; and there is no evidence showing, or tending to show, that he was entitled to any more of that increase; and therefore the verdict of the jury must be for the defendants. *Answer:* This point is refused. [5]

6. The uncontradicted evidence is that prior to the purchase of the stock in question in 1901 by the defendants, one of the defendants, Henry Birnstock, then a director of the corporation, asked the plaintiff to purchase these 172 shares, or a part thereof, and the plaintiff refused to do so. Under these circumstances the directors were not required to again solicit the plaintiff to take additional stock, and the verdict of the jury must be for the defendants. *Answer:* This point cannot be affirmed on the evidence in this case, and is refused. [6]

7. The increase of the capital stock having been authorized in 1892, and it appearing from the uncontradicted evidence that the plaintiff never undertook to exercise his right, if any, to subscribe to any part of the increase, he is barred by his laches or acquiescence from complaining of the issue of said stock to others in 1901, nine years later. *Answer:* This point is refused. [7]

Verdict and judgment for plaintiff for $300. Defendant appealed.

*Errors assigned* among others were (1–7) above instructions, quoting them.

*J. S. Black*, with him *V. K. Keesey*, and *N. S. Ross*, for appellants.—Although those owning the stock of the corporation when the capital stock of that corporation is increased may each demand a proportionate part of the increase, they may waive that right and leave the stock to be disposed of to others: Shellenberger v. Patterson, 168 Pa. 30.

The plaintiff did not prove or offer to prove that he had demanded and offered to pay for any part of the shares in question: Wilson v. Bank of Montgomery, 29 Pa. 537; Electric Co. of America v. Electric Co., 200 Pa. 516.

Having refused to take the stock when it was offered to him, and having made no demand upon the corporation for any part of it, the plaintiff can have no cause of action: Hoyt v. Shenango Valley Steel Co., 207 Pa. 208.

If the plaintiff had at any time a right to an allotment from these 172 shares, he has waived that right by his acquiescence in the subscriptions by the defendants for a period of almost six years: Shellenberger v. Patterson, 168 Pa. 30.

*H. C. Niles*, of *Niles & Neff*, for appellee, cited: Reese v. Bank of Montgomery County, 31 Pa. 78; Morris v. Stevens, 178 Pa. 563; Electric Co. of America v. Edison Electric Co., 200 Pa. 516; Bird Coal & Iron Co. v. Humes, 157 Pa. 278.

OPINION BY HENDERSON, J., March 3, 1911:

The Wrightsville Hardware Company was a Pennsylvania corporation the capital stock of which was originally $5,000 divided into 500 shares. In February, 1892, the stockholders authorized an increase of the capital by an addition of 2,000 shares of the par value of $10.00 each. All of this increase of stock was issued prior to March 12, 1901, except 172 shares. Just when the shares were so

issued does not appear from the evidence but it was presumably soon after the increase was authorized. About March 12, 1901, the directors of the company entered into an arrangement among themselves in which they agreed to issue the 172 shares and divide it among themselves at the par value of the stock and on that day a resolution was accordingly passed at a meeting of the board directing that certificates for the stock be issued in the proportions agreed upon. The certificates were delivered April 2, 1901, to the members of the board to whom they were allotted and a check of one of them for $1,720 was paid into the treasury for the stock. This action was taken without notice from the board of the intention to issue the shares and without an opportunity after the adoption of the resolution to any other stockholders to take stock by right of preëmption or by purchase. The evidence tends to show that at this time the stock was worth more than $30.00 per share and it was sold by the respective owners in 1906 for $40.00 per share, dividends having been paid thereon in the meantime to the amount of $3.50 on each share. The plaintiff was at that time the owner of 152 shares of the stock of the company and this action was brought to recover his proportion of the profit derived by the defendants from the sale of the stock to themselves. To support his claim he relies on the generally accepted principle relating to the administration of the business of a corporation that where the capital stock is increased and is about to be issued every existing stockholder then has the right to subscribe at par for such a proportion of the stock to be issued as his holdings bear to the amount of stock then outstanding. The rule is thus stated by some of the text writers: "If the capital stock is increased by the proper authorities the right to take the additional shares vests in the stockholders pro rata:" Taylor on Corporations, sec. 569 (5th ed.). "When the capital stock of a corporation is increased by the issue of new shares, each holder of the original stock has a right to offer to subscribe for and demand from the corporation such a proportion of

the new stock as the number of shares already owned by him bears to the whole number of shares before the increase:" 1 Cook on Corporations sec. 286 (6th ed.). And this applies to such part of the original capital stock as is issued long after business is commenced by the company. "Those who are shareholders when an increase of the capital stock is effected enjoy a right to subscribe to the new stock in proportion to their shares and before subscriptions may be received from outsiders:" 23 Am. & Eng. Ency. of Law, 853. This principle was recognized in Reese v. Bank of Montgomery County, 31 Pa. 78, and applied in Morris v. Stevens, 178 Pa. 563 and Electric Company v. Electric Company, 200 Pa. 516. We do not understand that the appellants controvert the doctrine thus set forth. They present four grounds of defense on which they rely for relief from the judgment of the court below. The first is that the capital stock was increased in February, 1892, and that the plaintiff did not prove that he was at that time a stockholder. It did appear from the evidence, however, that he was the owner of 152 shares at the time when the defendants allotted the stock to themselves. The increase authorized by the stockholders in February, 1892, was 2,000 shares, but of this authorized issue the 172 shares remained in the corporation until the directors by their action on March 12, 1901, divided it among themselves. Up to this time there was not an actual increase of the capital stock as to these shares. There was merely the right to issue; a franchise then existing in the corporation. The shares became stock of the company when they were regularly issued. The statement of the right of preëmption given by Chief Justice Sterrett in Morris v. Stevens, 178 Pa. 563, is "In general the present holders of stock have a primary right to subscribe in proportion to their holdings for any new issue." This indicates that the persons entitled to participate in the distribution of the new stock are those who are stockholders at the time the stock actually goes out and this would cover the plaintiff's case. He was a stockholder and had been for a long time before the last

issue was made. But the plaintiff is not driven to the necessity of showing that he was a stockholder at the time the increase of the capital stock was authorized, for the directors were trustees of all of the stockholders and were bound by legal and moral obligation to manage the business of the company with a view to advance the interests of such shareholders and were forbidden by the same obligation to derive personal profit by the exercise of their authority as directors. They are presumed to have better understood the financial condition of the company than their coshareholders because they were actively engaged in its management and if, as seems to be proved, the stock was worth three or four times the price at which they took it themselves it would be a manifest wrong to the other shareholders to permit such disposal of the stock. When by reason of the prosperity of the company or the prospect of an advantageous sale of all the stock to another company there was a greatly increased value of the shares the directors could not issue and appropriate to themselves the unsubscribed stock at a price greatly below its known value. The stock when issued became a charge against the company and it was the right of the plaintiff to insist that if it was not to be equitably divided under the right of preëmption it should be disposed of at its market value. The directors owned a majority of the stock of the corporation and thereby controlled it and however well intended may have been their action the law forbids that they should take advantage of the power which they had to elect themselves directors and issue stock to themselves at a price greatly below its value.

But, say the defendants, the right to subscribe for any part of the unissued stock was waived by the stockholders because in their action authorizing the increase of stock in February, 1892, a resolution was passed providing that the stock that day authorized and remaining undisposed of should issue thereafter upon such terms and in such manner as the board of directors might direct. This resolution was evidently intended to give the di-

rectors power to sell to persons not then stockholders as much of the stock as was not subscribed for by the then existing stockholders, but it cannot be presumed that it was the intention of the stockholders that if by reason of changed conditions nine years afterward the stock became worth three or four times as much as it was in 1892 the directors were by this resolution empowered to take the unissued shares themselves at par. The resolution of the stockholders was passed with the implied understanding that the directors would dispose of the stock in the interest of the corporation and not for their individual advantage. If the shares had been offered to the stockholders or the public and disposed of at what would be considered a fair price the argument would be conclusive that no right of action arose in favor of the stockholders by such action. But that is not the case presented. The interests of the other shareholders were not protected in this respect. That which should have been a source of profit to all became a matter of gain to the directors who received the new shares.

It is further contended that the plaintiff failed to show that he made a demand for an allotment of this stock and that having been in default in that respect he cannot now successfully maintain an action for damages for refusal to permit him to participate in the distribution, and also that when solicited by one of the directors to subscribe for stock he refused. A satisfactory reply to the objection that no offer was made to take the stock is found in the fact that the directors did not give notice of their intention to cause the new shares to be issued and that no stockholder other than themselves had knowledge of the transaction until the new shares had been actually issued and paid for by the defendants. The solicitation to the plaintiff to take some of the stock was long before the time when the defendants took it and before the project was under consideration to sell the corporation to new owners. It might well be that the plaintiff would be unwilling to take stock at the time it was proposed to him by one of the

165, (1911).]          Opinion of the Court.

directors that he buy it, but his estimate of the property might be materially changed when a year or two afterward the stock was offered for sale. Moreover, the unwillingness of the plaintiff to buy did not relieve the defendants from the obligation to obtain a fair market price for the stock in the interest of all of the stockholders. The fact was a prominent one in Electric Co. v. Electric Co., 200 Pa. 516, and Hoyt v. Shenango Val. Steel Co., 207 Pa. 208, cited by the appellants, that the stock was disposed of at its value. The acquiescence which the defendants set up amounts to nothing more than delay in bringing the action. The plaintiff's right arose when the defendants took the stock for themselves. No intervening rights have arisen and no fact is disclosed by the evidence which prevented the plaintiff from bringing his action within the statutory limit. The case of Shellenberger v. Patterson, 168 Pa. 30, has a very different complexion from the case before us. There, the subscription of Patterson for 600 shares of the capital stock of the company made it possible for the latter to secure a loan of $60,000 which it proceeded to do by executing a mortgage to the Pennsylvania Trust Company. This loan could not have been made without the increase of the outstanding stock of the company caused by the Patterson subscription and the mortgage of the railroad company given to the trust company recited a resolution of the company authorizing an increase of the indebtedness to the extent of the Patterson subscription and the borrowing of an amount not to exceed the amount of the capital stock subscribed and at the time authority was given the president and secretary of the company to execute the mortgage for the loan both the directors and stockholders had knowledge of the Patterson subscription. The stockholders received the benefit and advantage of the subscription and there was no evidence that the stock would have sold for more. That case, however, while denying the right of the plaintiffs to an injunction to restrain the issuing of the stock pursuant to the Patterson subscription admits the right of a stockholder to an action

at law for damages for an injury done to him by a wrongful issue of stock. The authorities are against the position of the appellants and the assignments of error must be overruled.

The judgment is affirmed.