BATES v. UNITED SHOE MACHINERY CO.

(Circuit Court of Appeals, Second Circuit. June 2, 1914.)

No. 253.

1. CORPORATIONS (§ 158*) — STOCKHOLDERS — RIGHT TO SUBSCRIBE FOR NEW STOCK.

When a corporation by resolution authorized an issue of new stock for which the stockholders of record on a certain date were given the right to subscribe, complainant's predecessor in title held a certificate of stock duly indorsed with power of attorney to act in all respects for the record holder. *Held*-that presentation of such papers, together with a demand of the right to subscribe for the new stock and a tender of the necessary money, were sufficient to fix his right thereto.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 449, 587–592; Dec. Dig. § 158.*]

2. CORPORATIONS (§ 158*)—RIGHT OF STOCKHOLDER TO SUBSCRIBE FOR NEW IS- SUE—ENFORCEMENT IN EQUITY.

A stockholder in a corporation who, under the terms of an issue of new stock has a preferred right to subscribe for a certain amount thereof, may enforce such right by a suit in equity.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 449, 587– 592; Dec. Dig. § 158.*]

3. JUDGMENT (§ 592*)—BAR OF OTHER ACTION—SPLITTING CAUSES OF ACTION.

A receiver, to whom a certificate of stock in defendant corporation had been assigned, applied to have it transferred to his name on the books, which was refused. Afterward a new issue of stock was authorized, for which the stockholders of record on a certain date were given the pre- ferred right to subscribe pro rata. The receiver applied for the share to which his stock was entitled, and tendered payment therefor; but his of- fer was refused. He brought suit, and obtained a decree requiring de- fendant to transfer the stock on its books and for the recovery of back dividends. The stock was transferred to complainant, who brought suit to enforce the right to subscribe for his share of the new issue at par. *Held*, that the decree in the receiver's suit was not a bar to the second suit, that it was not a splitting of a single cause of action, but that the rights sought to be enforced in the two suits, while related, arose out of sep- arate transactions at different times.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1107; Dec. Dig. § 592.*]

Appeal from the District Court of the United States for the East- ern District of New York.

Suit in equity by Jerome E. Bates against the United Shoe Machin- ery Company. Decree for complainant, and defendant appeals. Af- firmed.

For opinion below, see 206 Fed. 716.

J. W. Griggs, of New York City, and W. B. Farr, of Boston, Mass., for appellant.

G. M. Mackellar, of New York City, for appellee.

Before COXE, Circuit Judge, and HAND and MAYER, District Judges.

HAND, District Judge. [1] In the case at bar Odell became an at- torney in fact for Cavanaugh, the stockholder, when Cavanaugh indors-

ed the certificates of stock, and we have the admission made upon the argument that that power of attorney was in fact free from any conflicting claims; in short, that Odell's title—to use a rather inapt word—was free and clear. Now it may be true that the defendant or its transfer agent had some just ground for hesitation in recognizing that the power of attorney so executed by Cavanaugh was within his powers, or that they could safely register Odell upon their books and issue to him a certificate, so making him a stockholder. That question we do not mean to pass upon, because we think it immaterial here. The fact remains that Odell did through his attorney, Smith, demand a new certificate and registration at least as early as October 27, 1900. If it be true that this was not a formal demand, it is equally true that any formal demand was waived. We think even a demand was unnecessary, but if it were, it was as good as made.

Coming, then, to the date of the resolution authorizing the issue of new stock of March 23, 1901, the status was that Cavanaugh was the stockholder and Odell his attorney, with power to do everything on his own behalf which Cavanaugh could do, but in Cavanaugh's name. During the month when the books were open, Odell made two efforts to exercise the right given to Cavanaugh, the stockholder of record, to subscribe for the new shares. He first wrote through Choate, his attorney in Boston, saying that he exercised his right, which was perhaps futile, but on the 23d of April, 1901, through Bates and Smith he actually appeared at the Hanover Bank, in New York, tendered the necessary cash, and demanded the right to subscribe. Odell unquestionably had the absolute right to subscribe; he was Cavanaugh's attorney, with full powers to do everything that Cavanaugh himself could do. This was one of those things and Odell tried to do it. The transfer agent refused the subscription, that is, refused to Odell his right to subscribe on his own behalf as transferee or attorney in fact. At that time, had the transfer agent wished, it might perhaps have rightfully insisted that the new certificate and registry should wait till the transferred shares were duly registered themselves, or if Odell had insisted on the shares at once, that they should have been issued in Cavanaugh's name. In this they would only have been following their records, as they were entitled to do; but when the old certificate was presented, duly indorsed, together with the subscription, the conditions mentioned in the resolutions were in fact fulfilled, and the transfer agent had no right to refuse the subscription, or indeed to refuse to give the stock full registry any longer than was necessary to ascertain the validity of the transfer. Concededly that had been done before this suit was brought.

[2] The next question is of the jurisdiction in equity. It has been well-settled law for long that the transferee of shares of stocks may call upon a court of equity in order to get his name registered and a new certificate. It must be admitted that in those jurisdictions which allow a transferee to sue for the full value of the shares at law upon refusal, this remedy seems a little anomalous, if the shares have a market value. The rule is different where there is a sale of stock, and it it a little hard to see why both remedies should coexist here and yet not on a sale. Sometimes it is said that the corporation holds the

shares in trust, and there is authority for that view in reported cases, but it seems rather an explanation to fit the instance. The most plausible reason seems to be that the refusal to register the new stockholder and give him a certificate subjects him to annoyance and indefinite trouble, the measure of which he cannot prove. Probably all his rights can be worked out as attorney for the old stockholder, but only with great trouble to him. Such a suitor requires equitable relief. It is surely somewhat anomalous to treat the refusal to register a shareholder or give him a new certificate as conversion of the stock, which indeed the corporation cannot mean it to be. However, whatever rights a transferee of old shares should have against the corporation, he should also have them in respect of new shares issued, like these, to old stockholders. Certainly the two cases are no different, and the authorities have given equitable relief nearly uniformly, in the latter as in the former, Dousman v. Smelting Co., 40 Wis. 418; Real Estate Trust Co. v. Bird, 90 Md. 229, 44 Atl. 1048; Cunningham's Appeal, 108 Pa. 546; Electric Co. v. Electric Co., 200 Pa. 516, 50 Atl. 164. Sometimes the point has not been considered, though equitable relief was given. Jones v. Railroad, 67 N. H. 119, 38 Atl. 120; Way v. American Grease Co., 60 N. J. Eq. 263, 47 Atl. 44; Snelling v. Richard (C. C.) 166 Fed. 635.

[3] Finally, there is the question of splitting the causes of action. This rule is a salutary one, as it tends to minimize litigation, but it is not capable of absolute and nice definition. Generally the courts have said that the incident must follow along with the thing, and that one cause of action should not be divided. "Cause of action" is a vague phrase, but we think that these two wrongs are separate enough not to constitute a single cause of action. As we have suggested, the wrongs were in failing to register Odell as stockholder upon two separate blocks of stock. His demand was made in respect of one in October, 1900, and the wrong consisted in failing to recognize him as soon as his title was clear. His demand in respect of the other was made in April, 1901, six months later. It concerned a separate block of stock purchased by subscription, not by transfer, and the result of a wholly different transaction. It is quite true that the right to the second block was derivative from the first, but it was not a mere incident to it, like a dividend. To get one's rights to the new stock one had to make a new and distinct bargain; the only connection between the two was that only the owners of the first block had the option to buy the new. While these two transactions might have been joined, we think that they need not have been. None of the authorities are in point; the question is necessarily res integra, and we see no reason to extend the rule to a case like this.

Decree affirmed, with costs.