ROBERT B. LUDY, complainant,

*v.*

JOHN M. LARSEN et al., defendants.

[Submitted December 6th, 1909. Decided March 6th, 1911.]

Successive stop notices having been served upon the owner of a building under section 3 of the Mechanics' Lien law (*P. L. 1898 p. 538*), and one of the stop notice claimants having commenced suit against the contractors to establish his claim, a subsequent claimant, who had an interest in defeating the claim in suit, undertook and conducted the defence in the name of the contractors and with their consent, but for its own use and benefit—*Held*, that the party thus undertaking and managing the defence to the suit was concluded by the resulting judgment so far as it established the claim of the plaintiff against the contractors.

---

On appeal from a decree of the former chancellor, advised by Vice-Chancellor Howell.

*Messrs. Bourgeois & Sooy,* for the appellant.

*Mr. John C. Reed* and *Mr. Ulysses G. Styron,* for the Atlantic City Lumber Company, respondent.

The opinion of the court was delivered by

PITNEY, CHANCELLOR.

This is an appeal from a decree made in an interpleader suit, whereby the fund in court was disposed of. The ground of the appeal is that the claim of one John W. R. Maginnis (assigned to Rufus Booye, the appellant) was disallowed.

It appears that the complainant, Ludy, entered into a contract with a firm of Larsen & Son, whereby they agreed to furnish the materials and do the work of altering and adding to a building owned by the complainant; that the contract was duly placed on file, and that thereafter, while money was in Ludy's hands due under the contract to Larsen & Son, sundry claimants served notices upon Ludy under section 3 of the Mechanics' Lien law. *P. L. 1898 p. 538.* Ludy filed his bill of interpleader and paid into the court of chancery the sum of $2,314.15 as the amount remaining in his hands owing upon the Larsen contract and payable to the stop notice claimants. A decree was made in due course requiring the defendants to interplead, and after the hearing a decree was made establishing all the claims with the exception of that of Maginnis. Besides disallowing his claim, the decree settled the order of priority of the other claims, with the result that so much of the fund as would have gone to satisfy the Maginnis claim, if established, was awarded to the Atlantic City Lumber Company, the next claimant in order.

One ground upon which the Maginnis claim was disallowed was failure to prove the fact or date of service of the Maginnis stop notice upon Ludy. Upon this point Ludy's bill of complaint, after setting forth that on or about March 14th, 1905, one B. served or caused to be served upon the complainant a written notice to the effect that the contractors were indebted to B. in the sum of $220, for work and labor done and per-

formed and materials furnished in and about the premises of the complainant, that payment of said sum had been demanded of the contractors and payment refused, and that complainant was notified and required to retain the amount of money so due and claimed by B. out of the money owing by the complainant to the contractors, proceeded to set forth—"That on or about the twelfth day of May of said year a like notice was served by John W. R. Maginnis claiming the sum of $619." The bill of complaint also sets forth that a few days later a like notice was served by the Atlantic City Lumber Company claiming the sum of $4,400, and that the lumber company had notified the complainant not to pay any persons claiming the fund who had served notices prior to the notice of the lumber company, upon the ground that the amounts claimed by them were in excess of the true amounts due.

To this bill the Atlantic City Lumber Company filed a cross-bill, setting up, among other things,

"That this defendant is informed and believes that one John W. R. Maginnis on or about May 12th, 1905, served or caused to be served upon said complainant a notice purporting to be under the authority and in conformity with the provisions of said section of said act, and by virtue of said notice claims to have a lien upon said fund and to be entitled to receive thereout the sum of $619 alleged to be due to him and to have been demanded from the said John M. Larsen & Son, contractors, for work done and materials furnished in and about the premises of the complainant, in pursuance of said contract; but this defendant avers that the sum claimed by the said Maginnis in his said notice was not due and payable at the date of the service thereof, but, if anything, a much smaller sum; that a part of the labor and material, payment for which is claimed and included in said notice, if performed or furnished at all, were not furnished in pursuance of said contract; that said Maginnis had not at the date of the service of said notice, and has not since, performed said work in such manner as to entitle him to any payment by said contractors, and that said notice is in other respects informal, defective and invalid as against the lien of this defendant upon said fund."

Maginnis filed an answer to this cross-bill, in which he distinctly asserted the service of a proper stop notice upon Ludy on May 12th, 1905, for $619; that afterwards, and within five days thereafter, Larsen & Son served written notice upon said Maginnis to establish his claim by judgment; that in pursuance

thereof Maginnis instituted suit against Larsen & Son in the Atlantic county circuit court; that the suit was defended, and that the trial resulted in a verdict in favor of Maginnis for the sum of $619, besides interest to date, and that judgment was entered upon the verdict for the sum of $647 and costs.

Upon the hearing before the learned vice-chancellor, the complainant, Ludy, testified that the Maginnis notice was served upon him, and identified a copy thereof, which is dated May 12th, 1905. Being asked, "Q. Do you remember when that notice was served on you?" he answered, "I don't remember anything except it says here May 12th, 1905." He testified, however, without objection, that at the time of the filing of his bill of complaint he swore that May 12th was the date on which he received the notice. Being afterwards examined respecting a notice signed by one Gould, dated May 29th, 1905, and asked if that notice was served upon him upon the day of its date, he answered, "I don't know any more than what I see here. All these notices were served on the dates they were marked."

At this point, counsel for the Atlantic City Lumber Company, which was the only party opposing or interested in opposing the claims referred to, made the following statement to the court:

"He has already sworn through the bill, as I understand it, it has been gone through here once, if your honor please, that these papers were served on the dates as designated therein. That won't be required again."

"The Court: I put it to counsel to consider whether that is proof. You produce a witness for the purpose of proving the date on which a notice was served, and in order to prove it you call his attention to the fact that he has sworn to it in an affidavit. Does that prove it?"

"Mr. Sooy: He afterwards says, refreshing his memory from that affidavit, he can now say it was served on that date."

"The Court: That escaped me."

From the entire record we think it clear that counsel for the lumber company intended to concede, and was understood by opposing counsel to concede, that sufficient proof had been made as to the dates of serving the notices in question, and that it was to be taken as proving (inter alia) that the Maginnis claim

was served upon Dr. Ludy on May 12th, 1905. Appellant apparently relied upon that concession, and at any rate is entitled to the benefit of it, as settling in his favor the fact and date of the service.

The learned vice-chancellor also expressed doubt whether the evidence showed that Maginnis completed his contract with Larsen & Son before his stop notice was served upon Ludy, and whether the claim made by him in the stop notice was not for a larger sum of money than was actually due from Larsen & Son to him.

It appeared, however, that about two months after the service of that notice he commenced an action at law in the Atlantic county circuit court against Larsen & Son for the recovery of the same sum of money mentioned in the stop notice; that a plea was interposed by the defendants in this action, and that a trial by jury resulted in a verdict and judgment in favor of Maginnis for the entire amount of his claim. The record of this judgment was introduced in evidence upon the hearing before the vice-chancellor, counsel for the Atlantic City Lumber Company making no objection to its admission, but contending that it was not binding upon the lumber company because that company was not a party to the action.

There is no question that whatever was due to Maginnis when the action at law was commenced, was due when his stop notice was served, for the evidence upon the hearing in chancery shows beyond controversy that whatever he did about the performance of his contract was done before the service of his stop notice. As against Larsen & Son, therefore, the judgment conclusively settles in favor of Maginnis both points upon which the learned vice-chancellor doubted.

The question is, what is the effect of the judgment upon the Atlantic City Lumber Company?

Under the peculiar facts of the present case we are not called upon to consider whether in ordinary circumstances a judgment at law, recovered by stop notice claimant against contractor, is conclusive upon the owner or upon subsequent claimants. See *Taylor* v. *Wahl, 69 N. J. Law (40 Vr.) 471.* For the evi-

16

dence shows, and it is not disputed, that the lumber company, with the consent of Larsen & Son, undertook and conducted the defence of the Maginnis suit, employing the attorney and paying the expenses of the trial, including the expenses of Maginnis himself, who attended as a witness.

In short, it appears, as we think, that the defence of the Maginnis suit, while made in the name of Larsen & Son, was made by the lumber company, at its own expense and for its own use and benefit. That company having served upon Ludy a stop notice of its own after the service of Maginnis' notice, and its claim being sufficient in amount to more than exhaust the moneys remaining in Ludy's hands due to Larsen & Son, it manifestly had a legitimate interest in contesting the Maginnis claim, in order to show, if it could, that either nothing was due to him, or, if anything, a sum less than he had demanded in his stop notice.

Having thus, for reasons affecting its own interest, undertaken and managed the defence to the suit of Maginnis against Larsen, the lumber company is, we think, concluded by the result of that litigation. It is, of course, fundamental that personal judgments conclude only the parties and their privies. But the estoppel is not limited to such as are parties on the record. It includes those who are parties in fact. As Greenleaf well says:

"The rules of law upon this subject are founded upon these evident principles or axioms, that it is for the interest of the community that a limit should be prescribed to litigation; and that the same cause of action ought not to be brought twice to a final determination. Justice requires that every cause be once fairly and impartially tried; but the public tranquility demands that having once been so tried, all litigation of that kind, and between those parties, should be closed forever. It is also a most obvious principle of justice that no man ought to be bound by proceedings to which he was a stranger; but the converse of this rule is equally true, that by proceedings to which he was not a stranger he may well be held bound. Under the term *parties*, in this connection, the law includes all who are directly interested in the subject-matter, and had a right to make defence, or to control the proceedings, and to appeal from the judgment. This right involves also the right to adduce testimony, and to cross-examine the witnesses adduced on the other side." *Greenl. Evid.* §§ *522, 523.*

See, also, *Id.* § *535.* And see, to the same effect, *1 Freem. Judg. (4th ed.)* § *174; Big. Estop. (5th ed.) 113, 114; 1 Herm. Estop.* § *148.*

Numerous reported decisions have proceeded upon a recognition of this principle. *Lyon* v. *Stanford, 42 N. J. Eq. (15 Stew.) 411; Davenport* v. *City of Elizabeth, 43 N. J. Law (14 Vr.) 149; Lovejoy* v. *Murray, 3 Wall. (U. S.) 1, 18; Robbins* v. *Chicago, 4 Wall. (U. S.) 657, 672; Valentine* v. *Farnsworth, 21 Pick. (Mass.) 176, 181, 182; Elliott* v. *Hayden, 104 Mass. 180, 182; Carleton* v. *Lombard, Ayres & Co., 149 N. Y. 137, 151; Stoddard* v. *Thompson, 31 Iowa 81; Montgomery* v. *Vicory, 110 Ind. 211; 11 N. E. Rep. 38; Thomsen* v. *McCormick, 136 Ill. 135; 26 N. E. Rep. 373; Potter* v. *Clapp, 203 Ill. 592; 68 N. E. Rep. 81; Parr* v. *State, 71 Md. 220; 17 Atl. Rep. 1020; National Marine Bank* v. *Heller, 94 Md. 213; 50 Atl. Rep. 521.* See, also, *Hale* v. *Finch, 104 U. S. 261, 265; City of Boston* v. *Worthington, 10 Gray (Mass.) 496; Andrews* v. *Gillespie, 47 N. Y. 487, 492; City of Rochester* v. *Montgomery, 72 N. Y. 65, 67; Heiser* v. *Hatch, 86 N. Y. 614.*

The decree under review should be reversed, and the record remitted to the court of chancery to the end that a new decree may be made providing for the satisfaction out of the fund in court of the Maginnis claim held by the appellant, together with the appellant's costs in this court and in the court of chancery, with priority over the claim of the Atlantic City Lumber Company.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, CONGDON—14.