FLORENCE W. FAITOUTE, complainant,

*v.*

SEAMON L. WRIGHT et al., defendants.

[Submitted December 5th, 1910. Decided June 19th, 1911.]

1. While a judgment obtained on a claim against a contractor under section 4 of the Mechanics' Lien law (*P. L. 1898 p. 539*), as amended in 1899 (*P. L. 1899 p. 348*), is conclusive as to the correctness of the

claim upon the parties to the action and their privies, it is not conclusive in that respect upon the owner of the building nor upon other persons claiming the contractor's moneys by reason of assignments thereof made before the suit resulting in such judgment was begun, who had no notice of the suit, and who have not by their actual intervention brought themselves within its binding effect.

2. A judgment obtained on a claim against a contractor under section 4 of the Mechanics' Lien law (*P. L. 1898 p. 539*) as amended in 1899 (*P. L. 1899 p. 348*), may be given in evidence, in an interpleader suit brought to determine the respective rights of rival claimants of moneys earned by the contractor, to show, *prima facie*, the amount due; but it will not prevent a person claiming the contractor's moneys by virtue of an assignment thereof made before the suit resulting in such judgment was begun, who had no notice of the suit, and who had not intervened therein, from proving that the claim is in fact unfounded.

On appeal from a decree of the court of chancery, in an interpleader suit, which decree was advised by Vice-Chancellor Stevens.

*Mr. Atwood L. De Coster* and *Mr. Frank E. Bradner,* for the appellant, the T. B. Miller Company.

*Messrs. Guild & Martin,* for the respondents, Seamon L. Wright, the First National Bank of Summit and Emma S. Helms.

The opinion of the court was delivered by

TRENCHARD, J.

This is a contest over $1,209.95, the final payment due from the complainant, the owner, to the defendant Seamon L. Wright, a contractor, on a building contract in writing. It appears that on September 18th, 1907, Wright, by writing, assigned the final payment under such contract to the defendant Emma S. Helms, for the use of the defendant the First National Bank of Summit, as security for the payment of a debt of $1,900, then due from Wright to the bank; that on December 6th, 1907, the defendant, the T. B. Miller Company, served upon the owner a notice under section 3 of the Mechanics' Lien law (*P. L. 1898 p. 538*), as amended in 1905 (*P. L. 1905 p. 311*), alleging that there was due

36

it from Wright $1,542.23 for materials furnished by it to Wright and used in the erection of the building under the contract, which sum had been demanded and refused; that upon the receipt of this notice the owner notified Wright of its receipt; that, later, Wright served the Miller company with a notice disputing its claim, and requesting it to establish it by judgment in pursuance of section 4 of the act as amended in 1899 (*P. L. 1899 p. 348*); that, still later, Wright was adjudicated bankrupt by the district court of the United States for the district of New Jersey, and Harry H. Poole was appointed trustee in bankruptcy for Wright; that, subsequently, leave was given by the bankruptcy court to the Miller company to bring suit against Poole, trustee in bankruptcy for Wright, on the disputed claim, and such suit was instituted in the Union county circuit court and resulted in a judgment for the plaintiff for $1,635.55; that, at about the same time, Emma S. Helms begun a suit in the supreme court of this state for the use of the First National Bank of Summit against the owner to recover the moneys alleged to be due the bank by virtue of the assignment to the bank; that thereupon the owner filed her bill of interpleader and paid into the court of chancery the sum of $1,-209.95; and that subsequently a decree of interpleader was entered, the taxed costs ordered paid, leaving a balance of $1,064.45, to be disposed of in this litigation.

The cause was heard by Vice-Chancellor Stevens, who advised a final decree in favor of the bank. The appeal of the Miller company from such decree is now here for review.

We are of the opinion that the decree should be affirmed.

It appeared, by the proofs, that the final payment upon the contract was not due when it was assigned to the bank on September 18th, 1907. If, therefore, the Miller company had an unpaid claim for materials furnished the contractor and used in the erection of the building, by serving a notice upon the owner in accordance with the statute, it thereby secured, with respect to any moneys thereafter growing due upon the contract according to its terms, a right to payment in preference to the rights of the bank to whom the contractor had assigned such moneys before the notice was served. *Slingerland* v. *Binns, 56 N. J. Eq.* (*11*

*Dick.)* *413.* See, also, section 6 of the act of 1898. *P. L. 1898 p. 540.*

But the bank contended, and the vice-chancellor found, that the materials furnished by the Miller company, which were used in the erection of the building, had been paid for, and that consequently the fund belonged to the bank. We think such finding is fully supported by the proofs. While Wright owed the Miller company a large sum of money, yet the evidence is quite convincing that he paid for all the material entering into the "Faitoute house" by a check for $1,500, drawn to the order of the Miller company on September 20th, 1907. This is shown by an inspection of the check itself, on which was written the words "on Faitoute house;" by the testimony of Wright himself and his bookkeeper as to the application of the payment; by the testimony of Mr. Garrabrandt, another materialman, who appears to have been disinterested, and by the circumstance that the bank had insisted upon this application of the payment.

It is contended, however, that the judgment obtained by the Miller company against the contractor's trustee in bankruptcy is conclusive against the bank. The vice-chancellor held that it was not; that it was *res inter alios acta.* We agree that the judgment is not conclusive in this case against the bank for the reasons we will now state.

We assume, without deciding, that the judgment against the trustee in bankruptcy of the contractor had the same legal effect as a judgment against the contractor. Now it appeared that the bank's right had been vested months before the suit resulting in the judgment was begun, and that neither the bank itself nor the owner was a party to or had notice of the suit.

In determining what force, as between rival claimants to a fund in the owner's hands, is to be accorded to a judgment obtained on a claim against the contractor under section 4 of the Mechanics' Lien law (*P. L. 1898 p. 539*), as amended in 1899 (*P. L. 1899 p. 348*), we must have recourse, as in all cases, to the established rules of statutory construction, and to the general principles of law. In applying the former, we look at the state of things that existed before the passage of the statute, and then at the changes the statute worked in such situation. As to a stop-notice claim-

ant, section 3 of the act of 1898 (at *p. 538*), afterward amended
by the act of 1905 (*P. L. 1905 p. 311*), and now again amended
by the act of 1910 (*P. L. 1910 p. 500*), provided that with respect
to "moneys or wages *due* to him" demanded of the contractor
and unpaid, he might stop payments due to the contractor from
the owner, and have such sums retained by the owner, who was
authorized to pay out the contractor's money to such claimant "on
being satisfied of the correctness of such demand." Whether or
not this was just to other claimants, including other stop-notice
claimants and persons claiming such moneys, or any part thereof
by reason of orders or assignments thereof, was a legislative ques-
tion, concerning the determination of which they cannot com-
plain, since all they get by this statute is an act of grace and not
of common right. That it was not just to the contractor, whose
moneys earned under his contract were thus disbursed to pay a
claim against him of whose correctness he alone had personal
knowledge, was so apparent that the section now under considera-
tion (section 4) was added to the legislative scheme, giving to the
contractor, and to him alone, a remedy by which his knowledge
of the correctness of a claim against him could, at his option, be
made available to prevent the diminution of the total sum due to
him under the contract. The remedy was that the contractor
might, by a timely notice to the owner, and a like notice to the
stop-notice claimant, compel the latter to bring an action on his
claim which was to be established only after the contractor had
thus had an opportunity to dispute its correctness. That the
remedy was for the contractor's benefit is shown by the fact that
he alone could set it on foot, and that the notice of his purpose to
avail himself of his remedy was limited to the single claimant
whose demand was disputed. Whether or not this was just to
other claimants was also for the determination of the legislature,
concerning whose action no complaint can be made for the reasons
before stated. As the result of the remedy thus given, the statute
contemplates a judgment which binds the persons who are parties
and their privies and those who have intervened, as in *Ludy* v.
*Larsen, 79 Atl. Rep. 687*, as to the correctness of the claim, and
upon which the owner may safely rely as establishing the amount
due from the contractor to the materialman or laborer whose

claim is contested. If, in the absence of fraud or collusion, and without any notice of its dispute by persons not parties to the judgment, the owner should be satisfied with the correctness of the claim so established and pay it, the judgment would no doubt protect him against other claimants to the fund of whose intention to dispute the payment he had no notice. The primary purpose of this section of the statute is the establishing of the correctness of a claim which the contractor disputes, but this does not justify the owner in paying if he has notice of other claimants to the fund who have not had an opportunity to be heard with respect to the correctness of the disputed claim. Of course such claimants cannot stand by without giving notice that they intend to dispute the correctness of the claim, and by their silence allow the owner to assume that they are content with the finding, and to pay as required by the statute, and then call upon him to pay a second time.

In the present case it is admitted that the owner had notice of the assignment to the bank and that the bank disputed the correctness of the claim of the Miller company. By filing her bill of interpleader, the owner said in effect that she was *not* "satisfied of the correctness of such demand" of the Miller company. In such situation she took what we deem to be the proper course when she filed her bill of interpleader and called upon all claimants to establish their rights to the fund. Hence, while the judgment is conclusive as to the correctness of the claim upon the parties to the action and their privies, and no doubt is a protection to an owner of the building who has in good faith relied upon it as establishing the amount due and has paid without notice of other claimants who dispute it, it is clearly not conclusive as to the correctness of the claim upon the owner nor upon other persons claiming the contractor's moneys by reason of assignments thereof made before the suit resulting in such judgment was begun, who had no notice of the suit, and who have not by their actual intervention brought themselves within its binding effect. That the judgment cannot be conclusive upon strangers to it, but having claims, who have not intervened, is plainly indicated by section 6 of the act of 1898 (*P. L. 1898 p. 540*), which gives laborers and materialmen serving notices preference over persons

claiming under orders and assignments, and laborers preference over materialmen without reference to the date when the laborers shall have filed their lien or served their stop notices. The controversy over the claim is moreover a matter of which notice is required to be given to the owner, hence the judgment thereon is one of the circumstances to be considered by him in determining whether he is satisfied as to the correctness of the demand, which is and remains the statutory test of the propriety of its payment by him. The contractor, being a party to the judgment, is conclusively bound by it as to a payment made to the other party thereto, but as to the other claimants, the force of the judgment is the influence it rightly exerts upon the mind of the owner and not a force derived from the inherent attributes of a judgment over those whose rights have been determined by it. Such judgment, of course, may be given in evidence, either in the claimant's action at law against the owner upon his stop notice or in an interpleader suit brought to determine the respective rights of rival claimants, to show, *prima facie,* the amount due; but it will not prevent a person claiming the contractor's moneys by virtue of an assignment thereof made before the suit resulting in such judgment was begun, who had no notice of the suit and who has not intervened therein, from proving that the claim is, in fact, unfounded. So to hold puts this case in accord with the decision of our supreme court in *Taylor* v. *Wahl, 69 N. J. Law (40 Vr.) 471.*

The application of these principles to the present case completely justifies the position taken by the vice-chancellor.

The appeal under review will be affirmed.

GARRISON, J. (dissenting).

The fund brought into court is the final payment due from the owner to the contractor who had assigned it to the bank as security for a note of his that it held. The contestants for the fund are this assignee of the contractor and a materialman (who had served a stop notice on the owner), each of whom claims under the contractor, the bank directly, the materialman under the Mechanics' Lien act. Under the scheme of this act, the unpaid contract price in the hands of the owner is a fund for the payment

of certain claims, which, even before notice is served on the owner, are inchoate liens on the money so due to the contractor, to be worked out by the machinery of the act, one feature of which is that the correctness of such claims, if disputed by the contractor, shall be established by an action at law.  The sole purpose of this statutory provision is to protect the fund which, after such statutory claims upon it are paid, belongs to the contractor or his assigns.   An assignee of the contractor, therefore, upon familiar principles, takes the fund subject to such inchoate liens upon it as may be worked out in compliance with the terms of the statute. In accordance with such terms, the correctness of the claim of the materialman in the present case was established as against the fund in so far as it would have gone to the contractor had he not assigned it, and hence, was established as against the contractor's assign of the fund, not upon the ground of privity or under the doctrine of *res judicata,* but because such assignee of the fund took it subject to its being diminished by claims, the correctness of which was established in the manner prescribed by the statute. The bank therefore had no better standing to question in the court of chancery the correctness of the claim than the contractor had or than the bank would have had if the owner had paid to the materialman the amount of his judgment in the action at law.

This, in my opinion, is the proper construction of the Lien act in respect to the establishment of a claim against the unpaid balance due to the contractor, hence, I think that the decree in the present case was erroneous and therefore vote to reverse.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, BERGEN, VOORHEES, BOGERT, VREDENBURGH, VROOM, CONGDON, SULLIVAN—10.

*For reversal*—GARRISON, PARKER, MINTURN—3.