## THE NATIONAL MARINE BANK ET AL. vs. HELLER, HIRSH & CO. ET AL.

*Res Adjudicata—Effect of Ratification of Auditor's Account Making Allowances.*

The receivers of an insolvent corporation collected sums of money from various sources and under an Auditor's Account distributing the same a certain sum was allowed for taxes for five years on the real estate of the corporation. This account was finally ratified without exception being taken to the payment of taxes from that fund. Subsequently the real estate of the corporation was sold and an account was stated distributing the proceeds thereof among the preferred stockholders of the company, the preferred stock being a statutory lien on the real estate and certain other property. General creditors of the corporation alleged that the payment of the taxes had been erroneously allowed out of the funds distributed in the first account and that the amount thereof should now be deducted from the proceeds of the sale of the real estate and distributed among the general creditors. *Held*, that the order finally ratifying the first account in which payment of the taxes was directed, from which order no appeal was taken, constituted an adjudication of all the questions that might arise thereunder, and that the general creditors cannot now claim that the taxes were not properly payable from the fund distributed in that account.

Appeal from an order of the Circuit Court of Baltimore City (RITCHIE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE and JONES, JJ.

*Frank Gosnell* (with whom was *T. M. Lanahan* on the brief), for the appellant.

*Vernon Cook* and *Randolph Barton, Jr.* (with whom were *Gans & Haman* and *Barton, Wilmer, Ambler & Stewart* on the brief), for the appellees.

PEARCE, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court for Baltimore City sustaining exceptions filed by Heller, Hirsch & Co. and others to an auditor's account distributing certain assets of The Chesapeake Guano Co., an insolvent corporation in the hands of receivers, and a brief reference to the previous history of the case will aid in reaching a conclusion here.

Some years ago this corporation issued sixty thousand dollars of preferred stock, and subsequently became insolvent, after contracting numerous debts to unsecured creditors. At the time of the appointment of receivers, the assets consisted of a piece of real estate improved by valuable buildings and machinery, together with stock in trade and book accounts. Shortly after the receivers were appointed, the machinery and stock in trade were totally destroyed by fire, and the buildings were nearly destroyed, all being covered by insurance. The receivers collected from the insurance companies the following sums:

From the buildings    .  .  .    $10,408.08
From the machinery .  .  .      4,578.84
From the stock in trade .  .   . 1,817.86    $16,804.78

and from book accounts and rents,                10,616.73

making a total of              $27,421.51

Upon coming into possession of this sum, and before sale of the real estate, the receivers, on the 26th of January, 1898, had an account stated by the auditor distributing this sum, the account being divided into two parts designated as A and B. A was an expense account showing disbursements of

$21,737.14, leaving a balance for distribution among creditors, of $5,684.32 which was carried forward to part B, and there distributed among the preferred stockholders without regard to the sources from which it was derived.

Among the allowances in account A, was the sum of $3,685.11, being the aggregate amount of taxes for the five years from 1894 to 1898, both inclusive, upon the company's real estate and the improvements thereon. There was also allowed in that account to Perle P. Dunan, one of the receivers, the sum of $3,597.56, for a claim presented by him. Exceptions were filed by Heller, Hirsch & Co. and by the other exceptants in the present case, to account A, on the ground that the claim of Dunan was improperly allowed, and to account B, on the ground that the net balance above expenses was erroneously awarded to the preferred stockholders when it should have been awarded primarily to the general creditors; but no exceptions were filed by anyone to the allowance of the taxes above mentioned. All the exceptions to Dunan's claim were subsequently withdrawn, and account A was finally ratified August 6th, 1898. The exceptions to account B, after argument, were overruled, and account B was finally ratified March 30th, 1899. From that order or decree an appeal was taken to this Court, in the case of *Heller, Hirsch & Co.* v. *The Marine Bank*, 89 Md. 602, where it was held that the preferred stock was a lien only on the company's franchises and property owned at the time the stock was issued, and was not a lien on any of the funds derived from insurance, book accounts, or rents. Subsequently, on January 3rd, 1901, the real estate was sold for $10,500, and on March 15th, 1901, an auditor's account was stated, designated account W, distributing the proceeds among the preferred stockholders of the company under the ruling in 89 Md. *supra*.

In his report accompanying this account, the auditor states that he has, " at the request of counsel for the general creditors considered the question of adjusting the taxes on the real estate allowed in the account A which was finally ratified

August 6th, 1898, but has not disturbed the allowance of said taxes in that account, by this account, because the ratification of that account is, in the opinion of the auditor, conclusive as to the allowances therein." To the ratification of account W, Heller, Hirsch & Co. and all the exceptants to accounts A & B, have excepted, on the ground that the sum of $3,685.11 allowed in account A as taxes on the real estate, should have been deducted from the proceeds of the real estate, and distributed *pro rata* among the general creditors. After argument, these exceptions were sustained, and the case was referred to the auditor to restate said account accordingly, and from that order this appeal is taken.

The case was argued upon several grounds, but it is obvious that the primary question is as to the conclusiveness of account A, and upon this question it is to be regretted that the record does not embrace the reasons by which the learned and experienced Judge of the Circuit Court was controlled. The position of the appellants is, that the ratification of account A, and the application of the funds accordingly, operates as an adjudication not only in respect to the allowance of the taxes, but also in respect to the fund upon which they should be charged ; while the contention of the appellees is, that it is an adjudication *in rem*, only so far as respects the allowance of the taxes, so as to protect the receivers and their sureties in the payment of these taxes, but has no element of finality as to the fund out of which they are ultimately to come, nor as to any question in respect thereto between the contending creditors ; and they liken the situation of the general creditors here to that of a creditor who comes in after a first distribution, and is allowed a preference in the distribution of subsequent funds, to put him on an equality with creditors who received a dividend in the first account. If it be assumed that these taxes should, in justice, be paid either in whole or in part out of the proceeds of the real estate, the argument of the appellees would address itself forcibly to a Court of equity, but it cannot be allowed to prevail unless it can be reconciled with the decisions by which its soundness must be tested.

The rule by which it is determined whether a matter has become *res adjudicata* has been stated with great clearness and precision in *Henderson* v. *Henderson*, 3 Hare, 115, in which the Vice Chancellor said, " In trying this question, I believe I state the rule correctly that where a given matter becomes the subject of litigation, in and of adjudication by, a Court of competent jurisdiction, this Court requires the parties to bring forward their whole case, and will not, except under special circumstances, permit the same parties to open the same subject of litigation in respect of a matter which might have been brought forward as a part of the subject in contest, but which was not brought forward only because they have from negligence, inadvertence, or even accident, omitted a part of their case. The plea of *res adjudicata* applies, except in special cases not only to the points upon which the Court was required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, even using reasonable diligence, might have brought forward at the time."

This decision was approved by the Supreme Court of the United States in *Beloit* v. *Morgan*, 7 Wallace, 619, in which the Court, speaking of defences set up, said, "all the objecttions taken in this case, might have been taken in that. The judgment of the Court could have been invoked upon each of them, and if it were adverse to the appellant, he might have brought the decision here by a writ of error for review. The Court had full jurisdiction over the parties and the subject. Under such circumstances, a judgment is conclusive not only as to the *res* of that case, but as to all further litigation between the same parties, touching the same subject-matter, though the *res* itself may be different. * * * The principle extends not only to the questions of fact and law which were decided in the former suit, but also to the grounds of recovery and defense, which might have been, but were not presented."

That decision has also been adopted by this Court in a number of cases. In *State* v. *Brown*, 64 Md. 199, it was cited with approval, the Court also quoting with approval the fol-

lowing passage from *Aurora City* v. *West*, 7 Wallace, 102 ; " Where every objection urged in the second suit was open to the party within the legitimate scope of the pleadings in the first suit, and might have been presented in that trial, the matter must be considered as having passed in *rem judicatam*, and the former judgment in such case is conclusive between the parties."

In *Trayhern* v. *Coulbourn*, 66 Md. 278, JUDGE MILLER said " It is not necessary that issue should have been taken on the precise point which is controverted in the second case. * * * A decree is *res adjudicata* in respect to all matters of defence existing and which were available to the defendant at its date."

In *Albert* v. *Hamilton*, 76 Md. 309, JUDGE BRYAN said: " The question ought at that time to have been presented to the Court for decision. It is not in the power of a party to split up a subject of litigation into portions and bring them before a Court of Justice for adjudication in successive suits."

In *Barrick* v. *Horner*, 78 Md. 258, JUDGE PAGE said, " This rule includes also whatever, under the pleadings in the former proceeding, might have been brought forward ' as a part of the subject of contest.' " And in *Rogers, Brown & Co.* v. *Citizenz National Bank*, 93 Md. 613, where the conclusiveness of an auditor's account was denied, JUDGE BRISCOE said, " The audit when ratified and confirmed had the effect of an adjudication in *rem*, and the distributions contained in it are *res adjudicata.*"

We think the present case falls within the principles thus established. It was certainly within the power of the appellees to file objections to the allowance of these taxes in account A upon any of the grounds now urged. If they had done so, and the decision had been in their favor, it would have protested them unless reversed on appeal. If adverse to them they could have brought it here for review. They have had their day in Court. If it be said that the real estate had not then been sold, and it could not therefore be known whether it would sell for enough to pay these taxes, and that in any

event the fund then in hand was primarily liable for these taxes, the sufficient answer would be, that if either or both of these positions had been accepted as correct, the Court, either upon its own motion, or on proper application, would, in allowing these taxes, either have suspended payment by the trustees until sale of the real estate, or would have so framed the order of ratification, as to provide for reimbursement to the general creditors out of the proceeds of the real estate.

It was suggested by the appellees that the rule establishing a *res adjudicata* should be limited in its application to the receivers and their sureties, and should not be extended to a question between classes of creditors ; but we can upon principle see no satisfactory basis for this distinction, which is not recognized by any authority brought to our attention. On the contrary, it was considered and decided adversely to the contention of the appellees in *Corcoran* v. *Chesapeake and Ohio Canal Co.*, 94 U. S. 741, where it was said by JUDGE MILLER, that in chancery suits it has long been settled that adverse rights as between co-defendants may be determined, and if the parties have had a hearing, and an opportunity of asserting their rights, they are concluded by the decree so far as it affects rights presented to the Court and passed upon by its decree. From this review of the authorities and of the principles upon which they repose, we are constrained to the conclusion that the ratification of Audit A precludes the further consideration of any question relating to the payment of these taxes.

This view of the case renders it unnecessary to consider the other grounds of argument on either side.

> *Order reversed and cause remanded that account W may be ratified as stated.*
> *Costs to be paid by the appellees.*

(Decided December 6th, 1901.)