ALLAN C. GIRDWOOD et al., Admr.,

*vs.*

SAFE DEPOSIT AND TRUST COMPANY, Trustee,
et al.

---

WILLIAM HARRIS BRATT et al.

*vs.*

SAME.

---

GEORGE W. BLANEY et al.

*vs.*

SAME.

*Corporate Stock—Subscription Rights—corpus or Income—
Construction of Will—Surviving Children and Grand-
children.*

Where stockholders of a corporation are given the privilege of subscribing for new stock at a named price, such stock, when issued, constitutes corpus and not income or profits going to life tenants.                                                                          pp. 253-256

A decretal order ratifying an auditor's account by which a stock dividend, received by a trust estate, was allotted to the principal account, involved a determination that such dividend was corpus and not income, and was conclusive of that question in the absence of any appeal from the order.                        p. 257

Where a will, after giving life interests to five of the children of testatrix, with remainder, as regards the interest of each of said children, to his or her child or children, and then proceeded "but should my said children or either of them die without leaving a child or children surviving them as aforesaid, then the principal estate of my said child or children so dying, I give, devise and bequeath unto my children or child surviving such deceased child, and to the child or children (if any) surviving,

in case of the death of my said children or either of them, to be divided between them *per stirpes* and not *per capita,"* held that the surviving child or children of a deceased child shared, with any surviving child of testatrix, in the distribution of the interest of a child dying without leaving children.      p. 257

Testatrix having first given one-tenth of her estate to a grandchild, the child of a deceased daughter, for life, with remainder to her surviving children, and then given the remaining nine-tenths in trust for her own five children then living, with remainder to their children, *held* that the estate of the grandchild first mentioned was not entitled to share in the benefit of a later provision giving the interest of any one of such five children who might die without leaving children "unto my child or children surviving such deceased child, and to the child or children (if any) surviving, in case of the death of my said children or either of them."                    p. 258

*Decided April 5th, 1923.*

Appeals from the Circuit Court of Baltimore City (CARROLL T. BOND, J.).

Petition by the Safe Deposit and Trust Company, substituted trustee under the will of Martha Ann Bratt, deceased, asking for directions as to the distribution of a share of the estate of said deceased which was held in trust for her daughter, Josephine Davenport, formerly Knowles, for life with remainders over. From the decree of distribution, Allan C. Girdwood and Edgar H. Bratt, administrators c. t. a. of said life tenant, William Harris Bratt and others, and George W. Blaney and others, entered separate appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, and OFFUTT, JJ.

*Richard S. Culbreth* and *Eugene O'Dunne,* for Allan C. Girdwood and Edgar H. Bratt, administrators c. t. a.

*Allan C. Girdwood,* for William Harris Bratt and others.

*Eugene O'Dunne* for George W. Blaney and others.

*Frank Gosnell, Thomas F. Cadwallader* and *N. Irvin Gressitt,* for the Safe Deposit and Trust Company, trustee, Charles W. Bratt and George A. Bratt.

Boyd, C. J., delivered the opinion of the Court.

On the 13th day of May, 1891, the last will and testament of Martha Ann Bratt was admitted to probate by the Orphans' Court of Baltimore City. The portions of it particularly involved in this case are as follows:

(1) "I give, devise and bequeath one-tenth (1/10) part of the whole of my estate, real, personal and mixed, and wheresoever situate, to be held by my trustee hereinafter named for the use and benefit of my granddaughter, Adelaide Latimer, now Adelaide Blaney, the child of my deceased daughter, to take, receive and collect the rents, income, issues and profits arising therefrom and to pay over the same to her, after deducting proper costs and expenses, for and during the full term of her natural life, and this to her sole and separate use, free from the control of any husband she may have.

(2) "Item. And from and after the decease of my said granddaughter I give, devise and bequeath the principal of said one-tenth part of the whole of my estate as aforesaid unto the child or children (if any) surviving her, share and share alike. But should my aforesaid granddaughter depart this life without leaving a child or children surviving her, then in that event it is my will and desire that said principal of the one-tenth part of the whole of my estate as aforesaid shall go in the same manner and subject to the same provisions as is set forth in the next succeeding clauses.

(3) "Item. I give, devise and bequeath the remaining nine-tenths parts of the whole of my estate as aforesaid unto my said trustee, hereinafter named, in trust so that he will apply one equal fifth part of the net rents, issues, income and profits thereof unto each of my five children, to wit: Martha Ellen Bratt, Margaret Virginia Apsley (wife of Joseph Apsley), Josephine Knowles (wife of Theodore Knowles), Noah George Bratt and William Harris Bratt, for and during their natural lives, respectively.

(4) "Item. And from and after the death of my said children, or either of them, leaving a child or children, I give, devise and bequeath the principal of the estate aforesaid of the child or children so dying to the said child or children of such deceased child (excluding herefrom, however, the child or children of my son, William Harris Bratt, by his present wife, from whom he was recently divorced *a mensa et thoro*). But should my said children, or either of them, die without leaving a child or children surviving them as aforesaid (not taking into consideration the child or children of my son, William Harris Bratt, by his present wife), then the said principal estate of said child or children so dying I give, devise and bequeath unto my children or child surviving such deceased child, and to the child or children (if any) surviving, in case of the death of my said children or either of them, to be divided between them *per stirpes* and not *per capita*."

We have, for convenience of reference, inserted the numbers opposite the items, although they do not appear in the will.

Thomas M. Lanahan was named as the sole executor of and trustee under the will. He settled his account as executor and, on his petition, the Circuit Court of Baltimore City passed an order on the fourteenth of August, 1893, assuming jurisdiction of the trust, which since then has been administered under its direction. In 1906, Mr. Lanahan resigned

the trust and the Safe Deposit and Trust Company of Baltimore was appointed substituted trustee. Among the assets of the estate which came into the hands of Mr. Lanahan, trustee, was a certificate for 520 shares of stock of the Baltimore City Passenger Railway Company, which were then valued at seventy-five dollars per share. On the 15th of June, 1891, the directors of the railway company passed a resolution for the increase of its stock, under authority of an act of the Legislature, under which the then stockholders of the company were given the privilege of subscribing at par (twenty-five dollars per share) for an amount of new stock equal to their respective holdings, and that action of the directors was approved by the stockholders on July 2, 1891. On July 14, of that year, the trustee subscribed for 520 shares of that new stock, although he did not then have in hand funds of the estate out of which he could pay for it. He tried to have the life tenants join in advancing the necessary funds, but they declined, and Mr. Lanahan made the payments himself.

In 1894 the railway company declared a stock dividend upon the original shares alone of fifty per centum—Mr. Lanahan receiving 260 shares. Later another increase of stock was authorized and was issued at fifty dollars a share to the extent of forty per centum of the holdings of the stockholders, being in this case, 312 shares upon the 780 shares held by the estate, and 208 shares on the first issue of new stock then claimed by Mr. Lanahan and paid for by him individually. Later Mr. Lanahan was advised by his counsel, and the court so ordered, that the stock which he had subscribed and paid for must be held for the trust estate, and all of the 1820 shares were, with the approval of the court, sold at ninety dollars per share, amounting to $163,800, out of which he was re-imbursed for what he personally paid, including interest, and the balance was invested by order of the court.

It will be observed that by (1) the testatrix left one-tenth of her estate to her trustee for the use and benefit of her

granddaughter, Adelaide Blaney, the child of a deceased daughter, for and during the full term of her natural life. Then by (2), from and after the decease of her said granddaughter, she left the principal of said one-tenth unto her child or children (if any) surviving her, share and share alike, but if she died without leaving a child or children surviving her, the principal of the said one-tenth "shall go in the same manner and subject to the same provisions as is set forth in the next succeeding clauses."

By (3) she left the remaining nine-tenths to her trustee, "so that he will apply one equal fifth part of the net rents, issues, income and profits thereof, unto each of my five children, * * * for and during their natural lives respectively." She then made disposition of the principal, after the death of her said child or children as set out in (4).

Margaret Virginia Apsley, a daughter of testatrix, died in May, 1907; Martha Ellen Bratt, another daughter, died in April, 1912, and Noah George Bratt, a son, died in December, 1916, all having issue, and hence one-fifth of the nine-tenths in each of the cases was distributed. The other two-fifths of nine-tenths were thereafter held in trust for Mrs. Davenport and William Harris Bratt. Mrs. Davenport died on January 17, 1922, without leaving children or decendants surviving her. The substituted trustee then filed a bill to have the half of the two-fifths of the nine-tenths of the corpus distributed. It is, therefore, that interest which is now before us.

The lower court passed a decree distributing the Davenport share to two sons of Noah George Bratt, deceased, to children of Margaret Virginia Apsley, deceased (to a trustee for one of them, and subject to two attachments against another), to two children of Martha Ellen Bratt, deceased, and to William Harris Bratt. The decree also declared that the new stock of the Baltimore City Passenger Railway Company and the stock dividend referred to were corpus, and not income, and provided for costs. An appeal was taken

by the administrators c. t. a. of the estate of Josephine Davenport, another by William Harris Bratt and wife, Edgar H. Bratt and Nellie G. Hillary and husband, and a third, which, by agreement, was argued on the one record on behalf of George W. Blaney, individually and as executor of Adelaide Blancy and others, spoken of as the Adelaide Blaney interests.

(1) As the appeal of the administrators c. t. a. of the estate of Josephine Davenport presents the important question as to whether the proceeds of sale of the stock dividend and the increase of stock are to be treated as corpus or are to go to the representatives of Mrs. Davenport as "rents, issues, income and profits," the terms used in the will, we will first consider it.

Mr. Lanahan held the 520 shares of stock left by the testatrix to him in trust, and, as such stockholder, he had the right, under the Act of 1890, Ch. 271, and the action of the board of directors, which was approved by the stockholders, to subscribe for 520 new shares, which he did, as stated above. He paid out of his own money the first installment on said subscription, which was called by the company June 15th, 1893, and communicated with the five persons named in (3) above, suggesting that they appropriate some portion of their respective incomes for the purpose of paying for said subscription, and that the trustee would pay the balance. They declined to do so, and he reported the matter to the court, which on the 17th of August, 1893, passed an order that, upon payment by Mr. Lanahan of the balance, as the calls should be made, the company should issue the 520 shares to him individually. He paid out of his own funds all of the installments, but the company having refused to issue the certificate to him individually, it was issued to him as trustee. For those 520 shares he paid twenty-five dollars per share. On July 8th, 1898, he held, in addition to the 520 shares of new stock which he claimed to own, 780 shares, being the original 520 augmented by 260 shares issued as a

stock dividend on the 520 shares, and on that day he was notified by the company that additional shares of stock were about to be issued and he had the privilege of subscribing for them ratably and in proportion to his holdings at fifty dollars per share. By an order of September 26th, 1898, he was authorized to subscribe for the additional stock and to make sale of the privilege to subscribe. He subscribed for 312 shares, being 40 per cent. of 780 shares, and also for 208 shares, being 40 per cent. of the 520 shares which he had paid for, but no certificate had been issued in his name for the latter. He then held in all 1,820 shares of stock of that company. On January 17th, 1899, he filed a bill of complaint alleging the above facts and also stating that a syndicate had offered to buy all the shares of the corporate stock of the railway company at ninety dollars per share. The defendants in said bill were Mrs. Apsley and her children, Mrs. Davenport, Mrs. Bratt and her children, Mrs. Blaney and her child, William H. Bratt and George M. Bratt and his children. A decree was passed on March 20th, 1899, by which it was decreed that all the profits made on the sale of the stock at ninety dollars per share inured to the benefit of the trust estate; that said profit should be treated as part of the trust estate; that said Lanahan should be allowed the full amount of the advancements made by him in the purchase of the 520 shares, together with a sum equal to the dividends on the 520 shares so paid for by him, and the full amount he paid for the 312 shares and the 208 shares subscribed for in 1898, with interest. The decree concluded by saying that as the parties were not agreed as to whether the stock subscribed for and paid for by said Lanahan, or any part thereof, and the net proceeds from the sale thereof, were part of the corpus of the trust estate or were income properly distributable among the life tenants, that question was "reserved without prejudice by reason of any matter or thing contained in this decree, for the further consideration and future decree of this Court. And it is further ordered that

the costs of these proceedings and counsel fees allowed by the court shall be paid by the trustee out of the trust estate." An order passed the same day fixed the fees, payable out of the corpus of the estate. Exceptions were filed by Mrs. Apsley to an audit by which she alleged that the proceeds of the sale of stock over the original 520 shares should be held as profits or income, and not as corpus. The audit was ratified on the 20th of May, 1899, in all respects, excepting as to the matters mentioned in Mrs. Apsley's exceptions, which were reserved, as stated above.

We have referred to the facts at some length because they seem to us to reflect upon the question now being considered. These shares of stock were paid for, and were not what we ordinarily understand to be stock dividends, which may be declared by reason of profits or earnings having been retained by the company for the time being, which are no longer necessary to be kept. Under the authorities it seems clear that the increased stock was in this case corpus and not income or profits, which should go to the life tenants. It was said in *Real Estate Trust Co.* v. *Bird,* 90 Md. 229, 245: "There can be no doubt that the general rule is that when the capital stock of a corporation is increased by the issue of new shares, authorized by the charter, the holders of the original stock are entitled to the new stock in the proportion that the number of shares held by them bears to the whole number before the increase"—citing a number of authorities. Later in that opinion we said, in answer to the contention of the appellant, that the original subscribers had the right to the proposed increase from the times of their subscriptions, and the act of the stockholders in formally determining upon the increase only brings the pre-existing right into action: "We can only adopt that view in a qualified sense, for, especially with a provision in the charter such as we have before us, that *right* must be dependent upon the question whether the subscriber continues to hold his stock until the time of

the increase. It is not the *original subscriber*, but the *then holder of the original stock* that is entitled to the increase."

In *Miles* v. *Safe Deposit and Trust Company of Baltimore*, 259 U. S. 247, the question decided was in regard to taxation of shares of increased capital stock of the Hartford Fire Insurance Company. MR. JUSTICE PITNEY, in discussing the subject, said: "The right to subscribe to the new stock was but a right to participate, in preference to strangers and on equal terms with other existing stockholders, in the privilege of contributing new capital called for by the corporation—an equity that inheres in stock ownership under such circumstances as a quality inseparable from the capital interest represented by the old stock, recognized so universally as to have become axiomatic in American corporation law," citing a number of authorities. He had previously said: "The right to subscribe to the new issue was offered to existing stockholders upon the terms mentioned. It is evident, we think, that such a distribution in and of itself constituted no division of any part of the accumulated profits or surplus of the company, or even of its capital; it was in effect an opportunity given to stockholders to share in contributing additional capital, not to participate in distribution. * * * This privilege of itself was not a fruit of stock ownership in the nature of a profit; nor was it a division of any part of the assets of the company." Again he said: "The District Court proceeded correctly in treating the subscription rights as an increase inseparable from the old shares, not in the way of income, but as capital; in treating the new shares, if and when issued, as indistinguishable legally and in the market sense from the old, and in regarding the sale of the rights as a sale of a portion of a capital interest that included the old shares." While, of course, we realize that that decision was governed by the income tax laws and decisions concerning them, the general principles as to increased stock as therein announced are applicable.

One of the authorities there cited was *Atkins* v. *Albree,* 12 Allen, 359. In that case the trustees had no uninvested funds, and the remainderman claimed the right to take the new shares, or the premium received for them, to his own use. The court said: "The original shares and the money received from the sale of rights to take new shares in the capital stock of the corporation constitute the body of the trust property, which is to be treated as the capital or principal fund, the income of which is to be paid to the widow (life tenant) as directed by the will, and the whole is to go to the nephew (remainderman) on the happening of either of the events therein designated." "The right or privilege to take new shares in a corporation upon an increase of the capital stock within the limits fixed by the charter, is a benefit or interest which attaches to stock, not as a profit or income derived from the prosecution of the corporate business, but as inherent in the shares in their very creation." In the note to *Kelbach* v. *Clark,* 133 Iowa, 215, reported in 12 L. R. A., N. S., p. 810. it is said: "A right given by a corporation to its stockholders to subscribe at par for a new issue of stock, whether sold or exercised by taking new stock, belongs to corpus, and not to income." See also *Greene* v. *Smith,* 17 R. I. 28; *Curtis* v. *Osborn,* 79 Conn. 555; *Stewart* v. *Phelps,* 71 App. Div. 91, affirmed in 173 N. Y. 621. In the last case the trustee sold the right to subscribe to new stock of a corporation and realized over $6,000. The court said: "If the trustees had subscribed to this stock they would have used the principal of the trust fund and would have been entitled to that stock as principal; but, in their discretion, they concluded not to accept that right to subscribe, and because the stock was of greater value than they would have had to pay the company for it, they realized this amount. It certainly was not income, or a dividend on the stock. What the trustees had was a right to subscribe for stock which, if the right had been exercised, would have resulted in an investment of the trust estate; and the situation

was no different than if the trustees had subscribed for the stock and subsequently sold it at an increase. We do not think that this could be said to be rents, income, issues or profits."

Also see 28 *Am. and Eng. Enc. of Law*, 2 ed., p. 917; *Bates* v. *United Shoe Machinery Co.*, 206 Fed. 716, 725, 216 Fed. 140; *Stokes* v. *Continental Trust Company*, 186 N. Y. 285, 12 L. R. A. N. S. 969, where a note on the subject begins; 35 L. R. A. N. S., note beginning 568, 572.

Without stopping to consider how far the language used in the will of Mrs. Bratt—"net rents, issues, income and profits," may distinguish this case from *Thomas* v. *Gregg*, 78 Md. 545, *Ex parte Humbird*, 14 Md. 627, and other cases decided by this Court, there would seem to be no valid ground under the authorities generally for contending that the new stock subscribed and paid for belonged to the life tenants and was not a part of the corpus of the estate, or that the net balance of the proceeds of the sale of such stock could be so treated.

(2) The next question is, whether the proceeds of the stock dividend of 260 shares was a part of the corpus in this case, or whether the life tenants were entitled to it. The lower court held that it should be treated as part of the corpus, stating, in the opinion, as a reason therefor, "as it has been considered since the trustee's report and the auditor's account of 1894." On December 5th, 1894, the trustee filed a report in which, after saying he had stated an account the year before, he added, "In this connection, the trustee begs leave to report that since his last report he has received from the Baltimore City Passenger Railway Company 260 shares of the capital stock of said company as an extra dividend on the said 520 shares heretofore held by this estate. Said dividend is now to be treated as capital of said estate." The case was referred to the auditor and on December 8th, 1894, Auditor's Principal Account D and Auditor's Account E, Income, were filed. In the principal account these en-

tries appear: "By 520 shares of stock of the Baltimore City Passenger Railway stock, $39,000.00," and "By 260 shares of Baltimore City Passenger Railway stock—stock dividend—" In the Income Account there appeared, "By July 3, 1894, Div. City Pass. Railway Co., 520.00," and "By July 3, 1894, Div. City Pass. Railway Co., new stock, 260.00." Those accounts were finally ratified on December 20th, 1894. The amounts named in the income account, as was stated at the argument, meant $1.00 a share on those two items.

It is clear that the stock dividend was not covered by the exception in the decree of March 20th, 1899, above quoted, even if the court had the power to review the matter at that time, as it was not "subscribed for and paid for by said Thomas M. Lanahan," which is the kind of stock reserved by that decree for further consideration. But the ratification of the audits by the court on the 20th of December, 1894, was a final adjudication of that question. *Miller's Eq. Proc.* 650; *Pfeaff* v. *Jones,* 50 Md. 263, 269; *Taylor* v. *State,* 73 Md. 208, 220; *Berger* v. *Clendenin,* 88 Md. 154; *Marine Bank* v. *Heller,* 94 Md. 213. The stock dividend was then determined to be corpus, and no appeal was taken from the decretal order ratifying the audit, and other matters concerning it need not be discussed.

(3) We are also of opinion that the lower court was right in the distributions directed by it. There is no merit in the claim that William Harris Bratt, as the only surviving child of the testatrix, is entitled to the whole of the Davenport interest. The will plainly shows that the share of one of the children of testatrix who died without leaving a child or children surviving, should go—not alone to her child or children surviving such deceased child, but to such children or child, *"and to the child or children (if any) surviving, in case of the death of my said children or either of them to be divided between them per stirpes and not per capita."* That clause clearly shows that the child or children of a deceased

child of testatrix should participate in the distribution of such an interest as Mrs. Davenport's.

(4) We likewise agree with the lower court as to the Blaney interest. The testatrix, for reasons of her own, saw proper to first set apart the one-tenth of her estate for Mrs. Blaney and one-fifth of the remaining nine-tenths to each of her five children, during their natural lives. It may be, because Mrs. Blaney was a grandchild and, although she was willing for the tenth to go to her child or children, if she left any surviving her, she was not willing to have her great grandchildren participate in the distribution of a fifth left one of her own children, who died without leaving a child or children surviving her. She apparently concluded not to go beyond her grandchildren in that provision of her will. If she had intended Mrs. Blaney to have just what her own children were to have, she would have probably left the whole estate to the trustee for the benefit of the six—her one grandchild, a daughter of her deceased child, and her five children. But whatever her reasons were, her intention would seem to be too clear to leave any doubt about it.

> *Decree affirmed, the costs to be paid by the trustee out of the corpus of the one-fifth of the nine-tenths being distributed.*