HENRY L. BLETZER et al. *v.* FERDINAND C. COOKSEY.

[No. 9, January Term, 1928.]

*Decided April 3rd, 1928.*

The cause was argued before PATTISON, ADKINS, OFFUTT, and PARKE, JJ.

*Thomas Charles Williams* and *Eldridge Hood Young,* for the appellants.

*Edward J. Edelen,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appellee, Ferdinand C. Cooksey, sold unto the appellant, Henry L. Bletzer, and one Francis J. McLaughlin, of Baltimore City, a farm in Charles County, Maryland, for the sum of $7,500. The purchasers paid therefor $2,000 in cash and gave to the appellee five promissory notes, four for $1,000 each, and one for $1,500, signed by them and their respective wives, Carrie E. Bletzer and Anna M. McLaughlin, secured by a mortgage upon said farm, executed by the signers of the notes, for the amount and of the date of said notes. The mortgage contained a covenant to pay the mortgage debt and interest when and as the same became due and payable, as evidenced by the notes, in which covenant the wives joined with their husbands. There was default in the payment of the mortgage debt and interest and the mortgaged property was sold by the appellee, as mortgagee, under the power contained in the mortgage, and he became the purchaser at such sale. The sale was reported to the court and was in due course finally ratified and confirmed. An audit thereafter made, distributing the proceeds of sale, showed a deficiency of $2,819.16, in the payment of the mortgage debt and interest, and, after final ratification of the audit, a motion was filed by the appellee asking the court to pass a decree *in personam,* in his favor, against all of said mortgagors for the amount of such deficiency.

Upon the filing of the motion, subpoenas were issued directed to all of said mortgagors or covenantors, and copies of the motion and order of the court went out to be served on them. Subpoenas were served upon Bletzer and wife, and copies of the motion and order were left with them, but no subpoenas were served upon McLaughlin and wife, and no copies of the motion and order left with them, as service of process could not be had upon them.

Bletzer and wife appeared and separately answered the motion, asking that it be overruled on the ground that it would be inequitable to require the payment of the deficiency mentioned, when the appellee had already received $2,000 in part payment of the property which was lost to them, when, under the foreclosure proceeding, the appellee had again become the owner of the property.

There were no exceptions filed to the ratification of the sale by either Bletzer or his wife, assailing the adequacy of the amount at which the property was sold, and the sale was finally ratified and confirmed without any exception being filed thereto. Thus we are unable to find any force in this objection.

Carrie E. Bletzer, however, in her answer to the motion, asked that it be overruled on the further ground that "the said Ferdinand C. Cooksey, through his agents and attorneys, and the said Henry L. Bletzer represented unto" her "that it was necessary to have her signature to the said mortgage and the said note, as the wife of the said Henry L. Bletzer, in order to convey a good and merchantable title to the said Ferdinand C. Cooksey in the mortgage," and that she, "having no knowledge of the law nor what formalities are requisite to convey title to property, and knowing that it is customary for a wife to join with a husband in the execution of all papers conveying lands, and being importuned by the said Ferdinand C. Cooksey, through his agents and attorneys and her said husband, Henry L. Bletzer, to execute the said papers, did thereupon execute the said papers; but without any intention to bind herself or her estate to the payment of any moneys on account thereof."

The court, after hearing evidence, passed the decree appealed from, by which Henry L. Bletzer and Carrie E. Bletzer, his wife, were ordered and directed to pay unto Ferdinand C. Cooksey $2,819.16, the amount of said deficiency, with interest thereon from the seventh day of August, 1925, the date of the final ratification of the auditor's report, and all costs of suit accruing since last named date.

Carrie E. Bletzer, when produced as a witness in her own behalf, was first shown the mortgage mentioned and was asked if the signature thereto was hers? She said it was. She was then asked, "Will you tell us under what circumstances you signed that paper?" Her answer was, "Mr. Bletzer came home one evening and told me that he and Mr. McLaughlin had bought a piece of ground. I did not know where it was, nor when it was bought. Did not know anything about it at all, and Mr. Bletzer told me that I had to go up to a man named Mr. Lauebber. I did not want to sign the papers until Mr. Williams (the attorney for the appellants in this case) had looked them over, and at that time Mr. Williams was away. I told Mr. Bletzer that Mr. Williams was away, and he said I had to go and sign the papers, and I asked Mr. Bletzer what it was for, and he told me that the reason that I had to sign them was because the money Mr. Bletzer and Mr. McLaughlin paid, they would lose, and I went up to the office and only one elderly lady was there and she told me that was the paper to sign. I did not read the paper, I only signed it and walked away." She further testified that she "signed nothing until Mr. Williams looked them over. Mr. Williams was out of town," and Mr. Bletzer said if she "didn't sign at that time they certainly would lose the forfeit" of $2,000. The five notes were then exhibited to her and she stated that she had signed each of them. Later in her testimony she stated that Mr. Bletzer told her that, if she signed the papers, in case of his death she would get his part.

Mr. Bletzer, one of the appellants, when asked, "Did you or did you not ask Mrs. Bletzer to sign some papers"? answered, "I did, in case something happened to me she would

be entitled." He also testified that he asked his wife to go to Mr. Lauebber's office in Baltimore City, to sign some papers. She first refused to go, but finally went. Mr. Lauebber, he said, was the one who sold the farm for Mr. Cooksey. Mr. Bletzer was not asked whether he told his wife that she must sign the papers or they would lose the $2,000 paid by him and McLaughlin to Cooksey, nor did he refer to such alleged statement at all.

It will be seen that, in her answer to the motion, Carrie E. Bletzer stated that she signed the notes and mortgage because told by her husband "that it was necessary to have her signature to said mortgage and said notes, as the wife of the said Henry L. Bletzer in order to convey a good and merchantable title to the said Ferdinand C. Cooksey in the mortgage." While in her testimony she said that she signed the notes and mortgage because told by her husband that he and McLaughlin, purchasers of the property, would lose the cash payment made by them if she did not sign the notes and mortgage. In the answer there was nothing said as to any statement made by the husband as to the necessity of her signing to prevent the loss to him and McLaughlin of the money paid by them, and in her testimony there was nothing said as to any statement of Bletzer that it was necessary for her to sign in order to convey a good and merchantable title in the mortgage.

There is nothing in the evidence to show that any false representations, duress, or intimidation was used by Bletzer, Cooksey, or his agents, to induce Carrie E. Bletzer to sign the notes and mortgages which were signed by her, nor to show that her mind at the time she signed them was so subdued by harshness, cruelty, extreme distress, or apprehension, as to overpower and control her will. And the case does not fall within the principles laid down in *Central Bank v. Copeland,* 18 Md. 305, and other subsequent cases, in which those principles were applied.

The appellant, Carrie E. Bletzer, not only signed the mortgage, but she likewise signed the notes. She said she was told by her husband that if she did not sign them, he

and McLaughlin would lose the cash payment made by them, which she in her testimony refers to as a "forfeit." It would, therefore, seem that her signing the notes and mortgage was, by the appellee, made a condition precedent to the sale of the property, and her husband, in saying what he did, was only disclosing this fact to her, and stating what the result would be if she did not sign them. It was not shown that this statement was either a false or fraudulent representation. Nor was it shown by the evidence that her signing was due to any duress or intimidation. She was asked by him to go to the office of Lauebber to sign the papers, and as stated by her, she was told by him that she "had to go" and sign the papers, but evidently this was not said to intimidate, but was only to impress upon her the necessity of her signing them, for if she did not, he and McLaughlin would lose the money they had paid. When she went to the office of Mr. Lauebber, unaccompanied by her husband, she was told by some elderly woman, who, it seems, was alone in the office, that the papers handed her were the papers she was to sign, and she signed them without asking for any explanation and without ever reading them.

This case, we think, is controlled by *Comegys v. Clark,* 44 Md. 109. In that case the wife executed with her husband a mortgage upon her property to secure an existing debt of her husband. The mortgage was prepared and taken by the husband, accompanied by a justice of the peace, to his wife, and she was told by him that there was another paper to which he wanted her name. Without asking what the paper was and without seeking any explanation as to the character or contents of it, she executed and acknowledged it, and it was afterwards delivered to Clark, though Clark had no knowledge, until a long while afterwards, that the wife had executed the mortgage in ignorance of its character and contents. It was contended by her that the mortgage was void. The court there said: "If Comegys had made false representations to his wife to induce her to

execute the paper or had used threats or intimidations to compel her to execute it, the case would have come within the principles announced by this court in *Bank v. Copeland,* 18 Md. 305, provided Comegys had been acting as Clark's agent in procuring the execution of the paper, but no such means were made use of in this case. The paper was merely handed to her with the remark that there was another paper to which her name was wanted. She could read and write and had every opportunity to ascertain what the paper was before executing it, but she neither read it herself nor asked any explanation from her husband or the justice of the peace who was present as to the character or contents of the paper," and the court held that the mortgage was valid and binding upon her, and that she was not entitled to the relief sought to restrain by injunction the sale of the property under the power contained in the mortgage.

It may be that Carrie E. Bletzer would not have signed the notes and mortgages had she been fully aware of their contents and the consequence to her if her husband failed to pay the notes and comply with the provisions of the mortgage, but she cannot now, in the absence of fraud, false and fraudulent representations, duress, and intimidation, used to induce her to sign them, be heard to complain of the consequence of her act in signing the notes and mortgage, when she had full opportunity to inquire as to their character and contents or to read them and failed to do either.

The decree was entered, and we think, properly entered, under section 24 of article 66 of the Code, in which it is said: "If upon the sale of the whole mortgaged property by virtue of a power of sale contained in the mortgage under the provisions of this article the net proceeds thereof, after the costs and expenses allowed by the court are satisfied, shall not suffice to pay the mortgage debt and accrued interest as the same shall be found and determined by the judgment of the court upon the report of the auditor thereof, the court may, upon the motion of the plaintiff, the

mortgagee or his legal or equitable assignee, after due notice by summons or otherwise as the court may direct, enter a decree *in personam* against the mortgagor or other party to the suit or proceeding who is liable for the payment thereof for the amount of such deficiency; provided, the mortgagee or his legal or equitable assignee would be entitled to maintain an action at law upon the covenants contained in the mortgage for said residue of said mortgage debt so remaining unpaid and unsatisfied by the proceeds of such sale or sales."

This case is clearly distinguishable from the case of *Kushnick v. Lake Drive Bldg. & Loan Assn.*, 153 Md. 638. In that case it was held that the mortgagee could not maintain a suit at law against the party sought to be bound by said statute. While in this case the right of the mortgagee to maintain an action at law against Carrie Bletzer, and all other makers of the notes or covenantors in the mortgage, unquestionably existed, which right is made a condition precedent to the right to enter a decree *in personam* against the party sought to be bound by the statute.

The decree appealed from will be affirmed.

*Decree affirmed, with costs.*