# JOHN H. FETTING, ET AL. *v.* EDWARD L. FLANIGAN.

[No. 43, October Term, 1945.]

500

*Decided January 8, 1946.*

The cause was re-argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Robert F. Leach, Jr.*, with whom was *Augustin J. Quinn* on the brief, for the appellants.

*Roszel C. Thomsen*, with whom were *Clark, Thomsen & Smith* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court of Baltimore City, dated December 26, 1944, directing execution by equitable procedure (under Section 211, Article 16 of the Code) against certain funds due to the estate of Katherine Roney and Margaret C. Fetting from a trust created under the will of John D. Roney.

John D. Roney died on June 24, 1941, leaving an elaborate will and codicil disposing of a large estate. After certain proceedings in the Orphans' Court of Baltimore City, the executors and trustees under the will and codicil filed a bill of complaint on October 15, 1942, in the Circuit Court of Baltimore City, making all beneficiaries parties defendant, and asking the court to assume jurisdiction of the further administration of the estate and to determine the many complicated questions arising therein. Answers were filed on behalf of all the defendants and the court assumed jurisdiction.

Miss Roney and Mrs. Fetting were sisters of the decedent and entitled to several bequests and devises under his will. By item 2, he devised his residence, No. 3400

Strathmore Avenue, to them jointly; by item 3 his automobile to them jointly; by item 4 he bequeathed his jewelry and personal effects to Mrs. Fetting. By item 19 he bequeathed $15,000 to each of them. By item 20 he set up a $100,000 trust for Miss Roney for life; by item 22, he set up a $125,000 trust for Mrs. Fetting for life. By item 27, he created a trust for Mrs. Fetting, for life, in certain shares of stock. In item 46, he provided that the beneficiaries under items 20 and 22 should have the unqualified right to draw $3,000 a year from *corpus*.

Prior to his death, the decedent made Miss Roney and Mrs. Fetting the beneficiaries of life insurance totalling $67,939.94, and transferred to them interests in a joint bank account amounting to $33,688.70. He likewise transferred to Mrs. Fetting the property, 3405 Strathmore Avenue, appraised at $5,500 but reserved full power to sell or convey it during his lifetime. These interests were not mentioned in the will and did not pass under it.

John D. Roney left no children or descendants, and his wife predeceased him. Many of the requests in his will were to charitable or religious organizations, friends, employees or business associates. But the principal objects of his bounty were his three sisters, a sister-in-law, and his nephews and nieces.

On November 16, 1940, about three months before the execution of the will, Mr. Roney sold to his nephews, Francis D. McNamara and Donald C. McNamara, a large block of stock in the Globe Brewing Company, at a price of $500 per share, for which he took their promissory note. Said stock was afterwards reappraised by the Federal authorities at $802.85 per share. By item 31 of his will the testator forgave the payment of the note or any unpaid balance thereon, upon condition that "they shall jointly pay to my estate the amount of the Maryland inheritance tax chargeable against this forgiveness of debt and legacy, and also jointly a proportionate share or part of the total Federal estate tax

payable by my estate, and also any additional sums necessary to pay all other legacies given, bequeathed and preferred under this, my will, and in accordance with the terms hereof and especially any overpayment or deficit occasioned thereby."

In item 37 of the will certain legacies were directed to "be preferred and paid in full free of all taxes to the exclusion of any and all other items." In this category were items 19, 20 and 22. Certain items were directed to be preferred and paid in full free of all taxes "except for the Maryland inheritance tax which shall be paid by the respective legatees." In item 45, Federal Estate Taxes chargeable against items 19, 20 and 22 were directed to be paid out of the corpus of the estate, so that the legatees should receive their legacies "without diminution from any such taxes." Other provisions required stock legatees to pay "a proportionate part" of the total Federal Estate Tax payable by the estate.

It should be noted that after the payment of debts and legacies there was no residuary estate, but rather a deficiency which was duly apportioned among the legatees chargeable therewith.

Virtually all of the questions raised by the bill and answers were settled by agreement of counsel and confirmed by decree of court passed on March 1, 1943, whereupon the matter was duly referred to the auditor, who stated an account on May 21, 1943. An order *nisi* was signed thereon. This account for the first time set up as a credit for Federal Estates Tax, items to be collected from Katherine Roney, $7,883.75, and from Margaret Fetting, $9,290.91. The details of these items were explained in Auditor's Exhibit No. 1, under the heading "Calculation of apportionment of U. S. Federal Estate Tax." Miss Roney was there charged with one-half the taxable portion of life insurance, in excess of $40,000, and one-half the joint bank account, Mrs. Fetting was charged with one-half the taxable portion of the life insurance, one-half the joint bank account, and the value of the property No. 3405 Strathmore Avenue. The audi-

tor's report, accompanying the account, called specific attention to the exhibit showing the liability for the tax.

Notice of the filing of the auditor's account was duly given to the appellant's counsel of record, but no exceptions were filed thereto, and the account was finally ratified on June 2, 1943. There is not the slightest suggestion that their attorney neglected or failed to examine the account, or acquaint his clients with its contents. Mrs. Fetting, on the stand, would go no further than to say that she did not recall getting any postcard notice; of course, this notice went to the attorney of record, under Rule 15 of the Supreme Bench of Baltimore City.

Mr. Wrightson, of the Safe Deposit and Trust Company, testified that he talked with Miss Roney and Mrs. Fetting about their liability for a portion of the Federal Estate Tax on numerous occasions, both before and after the filing of the auditor's account. The first occasion was three or four months after the death of Mr. Roney, when the insurance proceeds were collected for them by the Safe Deposit and Trust Company. Mr. Wrightson also testified that Miss Roney and Mrs. Fetting made an agreement with him in October, 1943, whereby they would pay the amounts charged against them out of amounts they might draw from the corpus of their respective trusts, but such an agreement was denied. In a letter to the appellees dated October 28, 1943, the appellants returned checks he had drawn for them to sign to pay the liability; they said they would give the matter consideration, and inquired why their legacies were not exempt under the will. On February 16, 1944, they refused to pay, and nothing has been paid on account thereof.

In the course of the hearing below Mrs. Fetting was asked the specific question, "When was the first time that you had any knowledge of that charge in the auditor's account?" Her reply was: "I knew—my sister and I knew that we owed the money. * * * My sister and I had known of the tax, but we could never really understand it because I thought the tax * * * was to be paid by

the Brewery stock." It is perfectly clear that they knew what they were charged with before they discussed settlement with Mr. Wrightson in October, 1943. Presumably they gained this knowledge from their attorney at the time the account was filed.

Katherine Roney died on April 5, 1944, intestate. Margaret C. Fetting died May 28, 1945, and on June 8, 1945, John H. Fetting, her executor, intervened in this appeal. All of the income due to Miss Roney, Mrs. Fetting, or their legal representatives, has been paid, but the appellees are holding $9,000 of corpus due to each of their personal representatives.

These are the funds sought to be reached by equitable execution in this proceeding, by petition filed by the appellees on September 22, 1944. By their answers filed a year and four months after the filing of the auditor's account, the appellants prayed the court to vacate the said auditor's account on the grounds: (1) That the apportionment of Federal Estate Tax charged against the appellants was erroneous and illegal and contrary to the intent and direction of the testator; (2) that the question of liability was never considered or acted upon by the court or heard upon its merits; (3) that the funds in the hands of the trustees are protected from execution by reason of the spendthrift trust set up in item 39 of the will, and (4) that the appellants are entitled to payment of $4,000 under item 19 of the will, heretofore charged against these legatees as an advancement. The appellees filed a demurrer and answer, and set up a plea of *res adjudicata*. After testimony and hearing the chancellor passed the decree appealed from, allowing execution and disallowing the counterclaim.

1. The theory upon which the auditor apportioned the tax is based upon the applicable Federal and Maryland Statutes.

Section 826 (c) of the Internal Revenue Code, 26 U. S. C. A., Int. Rev. Code, Sec. 826 (c), as it stood at the time of the testator's death, provided: "If any part of the gross estate consists of proceeds of policies of insur-

ance upon the life of the decedent receivable by a beneficiary other than the executor, the executor shall be entitled to recover from such beneficiary such portion of the total tax paid as the proceeds, in excess of $40,000, of such policies bear to the net estate."

Section 126, Article 81, of the Maryland Code, 1939, places a similar obligation upon the transferees of property required to be included in the gross estate "except in a case where a testator otherwise directs [by] will."

The appellants' whole case rests upon the contention that, by the general scheme of the will, an intention on the part of the testator to relieve these particular legatees may be inferred. It is perfectly clear, of course, that the language dealing with payment of taxes on particular legacies is not broad enough to cover taxes on property passing outside the will, but subject to Federal Estate Tax as a part of the gross estate. The stock legatees are expressly charged only with "a proportionate part" of the total estate tax.

2. In the view we take of the case, however, it is unnecessary to pass upon the correctness of the charges set up in the auditor's account. That account, including the apportionment of the Federal Estate Tax, was filed on May 21, 1943. Notices in the usual form were sent out by the auditor. Mrs. Fetting and Miss Roney were represented by competent counsel, and they did not at any time deny full knowledge of the fact that they were charged with tax liability in the auditor's account. No exceptions were filed and the account was finally ratified and confirmed.

In *Miller's Equity Procedure*, Sec. 552, p. 650, it is said:

"An order finally ratifying and confirming an auditor's report and account is an order in the nature of a final decree from which an appeal will lie. It is in every sense a judgment of the Court; for although it may not constitute a part of the final judgment on the whole case, it is nevertheless always considered as a judgment conclusive of the matter to which it relates, subject only

to be reheard or revised for such causes as would induce the court to rehear or revise any other of its judgments. It is conclusive as to the matters in controversy to which it relates and has the effect of a final decree. The account is *res adjudicata,* all parties are concluded and the litigation is terminated."

The appellants contend, however, that although the decree ratifying the account was enrolled, it may nevertheless be disregarded on the ground that the question of tax liability was never heard upon its merits.

It should be observed that the appellants did not seek to set aside the decree by original bill or petition; they question the enforceability of the decree in a proceeding in the nature of an execution thereon. It is obvious that the rights of other persons would be affected by any modification of the decree, which apportioned the liability of the various beneficiaries under the will. In other words, the attack upon the decree is collateral and not direct.

It is true that an enrolled decree may be set aside by a bill of review for error apparent on the face of the decree or for newly discovered evidence, or upon original bill for fraud. A decree may also be set aside by mere petition in certain classes of cases. "These are in cases not heard on their merits, and in which it is alleged that the decree was entered by mistake or surprise, or under such circumstances as shall satisfy the Court, in the exercise of a sound discretion, that the enrollment ought to be discharged and the decree set aside." *Saltzgaver v. Saltzgaver,* 182 Md. 624, 631, 35 A. 2d 810, 813, quoting *Foxwell v. Foxwell,* 122 Md. 263, 273, 89 A. 494; *Downes v. Friel,* 57 Md. 531; *Straus v. Rost,* 67 Md. 465, 479, 10 A. 74; and the leading case of *Herbert v. Rowles,* 30 Md. 271, 278. In the latter case, this Court speaking through Judge Robinson said: "We do not think the facts set forth in the petition  *  *  * sufficient to warrant the Court in the exercise of a sound discretion, to vacate the enrollment, and set aside the decree. True, the procedings at

first were of an *ex parte* character, but before the decree the appellant appeared by his solicitor, and could have made his defence. * * * It was not a decree by default for which this Court can relieve upon petition after enrollment. * * * The privilege of appearing by attorney was accorded to and availed of by appellant, and justice and good faith demand that he shall not now be permitted to repudiate his own act or that of his attorney."

The rule stated in the Saltzgaver case, and earlier cases therein cited, has been stated in somewhat different terms in another line of cases. *Hinden v. Hinden,* 184 Md. 525, 42 A. 2d 120, 122; *Green v. Green,* 182 Md. 571, 574, 35 A. 2d 238; *Simms v. Simms,* 178 Md. 350, 13 A. 2d 326. It is said in the Green case that: "There are three exceptions to the general rule where the procedure may be by petition: (1) Where the case was not heard on its merits; (2) where the decree was entered by mistake or surprise; and (3) where the circumstances satisfy the Court, in the exercise of a sound discretion, that the enrollment ought to be discharged and the decree set aside." [182 Md. 571, 574, 35 A. 2d 240.] In that case, however, the auditor's account was stated in the alternative, and the order of ratification of one of the accounts was passed without notice to the interested parties. In the case of *Whitlock Cordage Co. v. Hine,* 125 Md. 96, 112, 93 A. 431, there was also a lack of notice, and the auditor's account was reopened. These were cases of surprise. On the other hand, in a long line of cases it has been held that an auditor's account is binding upon parties, even though there was no actual hearing, where parties had an opportunity to object by filing exceptions thereto. *Windsor Construction Corp. v. Kolker,* 180 Md. 113, 23 A. 2d 29; *Kirsner v. Cohen,* 171 Md. 687, 190 A. 520; *Bletzer V. Cooksey,* 154 Md. 568, 141 A. 380; *Girdwood v. Safe Deposit & Trust Co.,* 143 Md. 245, 257, 122 A. 132; *Marine Bank v. Heller,* 94 Md. 213, 50 A. 521; *Berger v. Clendinen,* 88 Md. 151, 40 A. 705; *Taylor v. State,*

73 Md. 208, 20 A. 914, 11 L. R. A. 852; *Stewart v. Beard*, 3 Md. Ch. 227.

In the Saltzgaver case, *supra,* a decree was reopened after a full hearing on the merits. In that case, this Court permitted a decree dismissing a wife's bill for divorce to be reopened on petition because it found the decision of the chancellor clearly erroneous and at variance with established law, in a case involving marital status in which the state had an interest, and the failure of the petitioner to appeal was held to be excusable under the circumstances of the case. In *Hinden v. Hinden, supra,* there were charges of fraud and surprise. In the case at bar we find no circumstances that would warrant the reopening of the decree. There is nothing peculiarly inequitable in a decree apportioning tax liability among beneficiaries, and there is no showing that the appellants were not fully apprised of the charges against them prior to the ratification of the account.

3. The appellants contend that by reason of the spendthrift trust set up in item 39 of the will, execution cannot be allowed to reach the funds in the hands of the appellees. That item provided that "under all of the trusts created in this, my will, the trustees are directed to make all payments directly into the hands of the beneficiaries and into the hands of no others * * * without power to said beneficiaries, or any of them, to anticipate, charge, alienate or encumber either principal or income in any manner whatsoever."

There are two answers to this contention. (*a*) Conceding the validity of the spendthrift provisions both as to principal and income (*Medwedeff v. Fisher,* 179 Md. 192, 17 A. 2d 141, and cases there cited), we must nevertheless consider the essential nature of the liability here asserted. The Federal Estate Tax is imposed upon the decedent's entire net estate, which consists of the difference between the gross estate and the allowable deductions; it is upon the right to transmit, rather than upon the right to receive. *United States Trust Co. v. Helver-*

*ing,* 307 U. S. 57, 60, 83 L. Ed. 1104; *Ithaca Trust Company v. United States,* 279 U. S. 151, 155, 73 L. Ed. 647. The executor is primarily liable for payment of the tax, but the collector may proceed against any transferee, or assert a lien against the estate. It would seem, therefore, that the claim of the executors in the case at bar against transferees for a *pro rata* share of the tax, which they have paid, is in the nature of reimbursement or exoneration. The Maryland Statute gives full effect to these equitable doctrines.

It would seem in principle that the reimbursement should be allowed. The policy of the law in recognizing a spendthrift trust is to protect the beneficiary from improvident alienations of his interest in the trust *res,* but that policy does not extend to claims against the fund out of which the trust is created. "Creditors (of the beneficiary) * * * cannot enlarge the gift of the founder of a trust, and take more than he has given." *Smith v. Towers,* 69 Md. 77, 86, 14 A. 497, 498, 15 A. 92, 9 Am. St. Rep. 398, but the grantor cannot convey property free of his own obligations.

In the case of *In re Cramer's Estate,* 166 Misc. 713, 3 N. Y. S. 2d 75, 76, it was held that a beneficiary of a spendthrift trust could not invoke its provisions against a claim of the estate of his own testator. The Court said: "As the right is purely equitable in nature I hold that the executor is entitled to retain the trust income in satisfaction of the debt due from the beneficiary."

In the Restatement, Trusts, Sec. 157 comment (*d*), it is said: "The trustee is entitled to indemnity out of the trust property for expenses properly incurred by him in the administration of the trust, although the trust is a spendthrift trust." See also Sec. 244 comment (*d*).

In 2 Scott, Trusts, Sec. 157.3 it is said: "It is clear, of course, that the trustee himself is entitled to compensation for his services and to reimbursement for his proper expenditures in the administration of the trust, even though the trust is a spendthrift trust." It would

seem that the payment of taxes chargeable against the whole estate should be treated as an expenditure for which the trustee should be reimbursed out of the specific funds against which they are chargeable *pro rata.*

The appellees cite the cases of *Matter of Rosenberg's Will,* 269 N. Y. 247, 199 N. E. 206 (*certiorari* denied *Rosenberg v. United States,* 298 U. S. 669, 80 L. Ed. 1392) and *Mercantile Trust Co. v. Hofferbert, D. C.,* 58 F. Supp. 701. These cases hold that the entire income from a spendthrift trust is subject to the claims of the United States for income taxes due and owing from the beneficiary. But it is not necessary to consider that question in the instant case and we express no opinion on the point.

(*b*) In the case at bar the appellees are holding the funds in their hands for the personal representatives of the deceased beneficiaries. The rule seems to be generally recognized that creditors of a deceased beneficiary of a spendthrift trust are entitled to reach funds in the hands of his personal representatives. *Scott, Trusts,* Sec. 158.1; *Griswold, Spendthrift Trusts,* Sec. 352; *Restatement, Trusts,* Sec. 158, Comment (*a*). The protection afforded to the beneficiary should not extend beyond his life, at least in the absence of a provision in the will to that effect. Since the fund could be reached in the hands of the personal representatives, we perceive no reason why the appellees may not effect a setoff through equitable execution. *McKeown v. Pridmore,* 310 Ill. App. 634, 35 N. E. 2d 376, 384. "The right to a distributive share is subordinate from the beginning to the distributee's indebtedness to the estate." *Gosnell v. Flack,* 76 Md. 423, 427, 25 A. 411, 412.

4. The point raised by the answers, in the nature of a counterclaim to $4,000 deducted from each of the specific legacies of $15,000 left to the appellants, is entirely without merit.

Item 19 of the will provided:

"I give and bequeath unto each of the following persons, provided she be living at the time of my death, the

512

sum of Fifteen Thousand Dollars ($15,000) * * * my sister, Katherine Roney, my sister Margaret Fetting * * *." Item 36 provided: "Any gifts of money or property made to any legatee or devisee after the date of this, my will, shall be deemed advancements and payments *pro tanto* of any legacy or devise given under this, my will, and shall be charged against said legacy or devise and so accounted for unless at the time of said gift I shall express in writing a contrary intention."

Among the papers of the testator the executors found cancelled checks in the handwriting of the testator, in the amount of $4,000 each, marked "gift," payable to Miss Roney and Mrs. Fetting, and endorsed by them. The executors treated these as advancements and paid to Miss Roney and Mrs. Fetting the sum of $11,000 each in satisfaction of their legacies of $15,000. Both of the legatees executed releases under seal reciting the facts and discharging the executors from any liability with respect to these legacies. No claim is made that the releases were obtained by fraud or mistake, and they are binding upon the appellants. *Hammond v. New York P. & N. R. Co.*, 128 Md. 442, 97 A. 1011.

*Decree affirmed with costs.*